

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-06-443-CV

VERNON F. MINTON                                          APPELLANT

V.

JERRY W. GUNN, INDIVIDUALLY;                             APPELLEES
WILLIAMS SQUIRE & WREN, LLP;
JAMES E. WREN, INDIVIDUALLY;
SLUSSER & FROST, L.L.P.;
WILLIAM C. SLUSSER, INDIVIDUALLY;
SLUSSER WILSON & PARTRIDGE LLP;
AND MICHAEL E. WILSON, INDIVIDUALLY

------------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

This is a legal malpractice case in which the trial court rendered take-nothing summary judgment against appellant Vernon F. Minton in favor of appellees Jerry W. Gunn, individually, Williams Squire & Wren, LLP, James E. Wren, individually, Slusser & Frost, L.L.P., William C. Slusser, individually,

Slusser Wilson & Partridge LLP, and Michael E. Wilson, individually, all of whom represented appellant in a prior patent infringement action. We affirm.

## I. Brief Summary of Relevant Patent Law Rules

### A. The On Sale Bar Rule

This legal malpractice case involves application of a rule of federal patent law commonly referred to as the "on sale bar rule." This rule provides that a patent is invalid if it was put into commercial use through a commercial offer for sale more than one year before the inventor applied for the patent.[1] Under federal patent law, the date one year prior to the patent application's filing is commonly referred to as the "critical date."[2] A single commercial offer for sale before the critical date is generally sufficient to satisfy the on sale bar.[3]

---

[1] *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67, 119 S. Ct. 304, 311–12 (1998); *Electromotive Div. of Gen. Motors Corp. v. Transp. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005). The on sale bar is statutorily grounded in 35 U.S.C. § 102(b), which states:

> A person shall be entitled to a patent unless—
> . . . .
> (b)     the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States . . . .

35 U.S.C.A. § 102(b) (2001).

[2] *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1563 (Fed. Cir. 1987).

[3] *See, e.g.*, *Pfaff*, 525 U.S. at 67, 119 S. Ct. at 311; *Electromotive*, 417 F.3d at 1209; *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1188 (Fed. Cir. 1993) (per curiam).

**B.** **The Experimental Use Doctrine**

This case also involves the "experimental use doctrine." This doctrine provides that if the purpose of an offer for sale is primarily experimental, as opposed to commercial, the patent is not invalidated under the on sale bar rule.[4]

The ultimate question of whether a transaction is primarily for experimental use is one for the court to decide.[5] When patent holders or inventors contend that the experimental use doctrine applies, they are arguing that the on sale bar does not apply because it has been negated by the primarily experimental purpose of the commercial offer for sale.[6]

In determining whether the experimental use doctrine negates application of the on sale bar, the controlling issue is the purpose of the offer for sale, not the developmental status of the claimed invention.[7] In other words, the question posed by the experimental use doctrine is not whether the invention is "under development, subject to testing, or otherwise still in its experimental stage" at the

---

[4] *See, e.g.*, *Electromotive*, 417 F.3d at 1210.

[5] *See EZ Dock v. Schafer Sys., Inc.*, 276 F.3d 1347, 1351–52 (Fed. Cir. 2002); *see also Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1426 (Fed. Cir. 1996) ("Experimental use is a question of law to be analyzed based on the totality of the surrounding circumstances.").

[6] *See, e.g.*, *Pfaff*, 525 U.S. at 67, 119 S. Ct. at 311; *Electromotive*, 417 F.3d at 1213.

[7] *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1354 (Fed. Cir. 2002); *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1384 n.1 (Fed. Cir. 1999).

time of alleged sale, but whether the primary purpose of the inventor at the time of the sale was to conduct experimentation.[8] "Commercial exploitation, if not incidental to the primary purpose of experimentation, will result in an on sale bar, even if the invention was still in its experimental stage."[9]

## II. Factual and Procedural Background

### A. The TEXCEN Lease

In the early 1990s, appellant Vernon Minton, a former securities broker, formed a company called Texas International Stock Exchange, Inc. (TISE) and began developing a telecommunications network and software program called the Texas Computer Exchange Network (TEXCEN). TEXCEN was designed to allow individuals to trade securities through a computer network.

In 1994, Minton approached R. M. Stark & Co. (Stark), a National Association of Securities Dealers, Inc. (NASD) brokerage/dealer, regarding a potential lease of the TEXCEN system. In January 1995, Minton sent Stark a letter stating that "[a]fter five years of development, *TEXCEN* is scheduled to be on-line during March or April of this year," and that, "[a]s we discussed, [TISE] would appreciate your consideration in utilizing this program as an exclusive opportunity for enhanced order flow." Minton attached a draft lease agreement that stated it was intended

---

[8] ... *Allen Eng'g*, 299 F.3d at 1354.

[9] ... *Scaltech*, 178 F.3d at 1384 n.1.

4

"for the purpose of opening brokerage accounts and executing trades for individuals using TEXCEN."

Throughout negotiations, Minton never told Stark that the TEXCEN lease would be for experimental purposes, although Stark was aware that the system needed to be reviewed and approved by NASD before he could use it. Stark and TISE entered the TEXCEN lease on March 8, 1995 (the TEXCEN Lease). The lease provided in part that (1) Stark had the right to open brokerage accounts and execute trades for its individual customers using TEXCEN, (2) TEXCEN would perform in a workmanlike manner, and (3) Stark would pay the lesser of $2,000.00 or thirty percent of his gross revenues derived from TEXCEN per month for the term of the lease.

## B.    The '643 Patent

On June 28, 1996, Minton filed his provisional application for United States Patent No. 6,014,643 (the '643 Patent), more than one year after signing the TEXCEN Lease. The '643 Patent was for an interactive securities trading system based substantially on TEXCEN. Indeed, Minton stated in his deposition that he provided a copy of the TEXCEN software assistance guide to his patent attorney, who used it to prepare the '643 Patent application. On January 11, 2000, the United States Patent and Trademark Office issued the '643 Patent.

## C. The Underlying Patent Litigation

Minton filed suit against NASD in the United States District Court for the Eastern District of Texas to enforce the '643 Patent (the Patent Litigation), and later named NASDAQ Stock Market, Inc. (NASDAQ) as an additional defendant. Minton's lawyers in the Patent Litigation, the appellees in this case, filed suit without knowledge of the TEXCEN Lease. Minton did not disclose the lease to appellees until after NASD and NASDAQ first revealed its existence in discovery conducted in the Patent Litigation.

NASD and NASDAQ moved for summary judgment on Minton's infringement claims on the ground that the '643 Patent was invalid under the on sale bar set forth in 35 U.S.C. § 102(b). They specifically contended that TEXCEN embodied Minton's invention and that the lease, signed March 8, 1995, was a commercial offer for sale prior to the '643 Patent's critical date of June 28, 1995. Appellees contend that, among other things, NASD and NASDAQ asserted that the TEXCEN Lease: (1) stated that TEXCEN was already developed; (2) offered TEXCEN for use with customers; (3) established payment terms; (4) warranted that TEXCEN would perform; and (5) stated that the lease was entered for the purpose of allowing individuals to open brokerage accounts and execute trades.

Minton testified in the Patent Litigation that he expected to "benefit financially" from the lease and that, subject to regulatory approval, the lease allowed Stark to use TEXCEN "commercially." Minton conceded that TEXCEN was offered for sale

6

more than one year before his patent was filed, but argued that TEXCEN did not include all of the elements of the '643 Patent's claims and thus the on sale bar did not apply. The district court granted NASD and NASDAQ's motion for summary judgment based upon the on sale bar.

Following the district court's order, Minton asked his attorneys to consider defense of the on sale bar on a new ground: that the purpose of the TEXCEN Lease was primarily experimental rather than commercial, and, therefore, the experimental use doctrine negated the on sale bar. A motion for reconsideration was filed on Minton's behalf, with the experimental use issue briefed by new counsel. The district court considered Minton's motion but declined to grant reconsideration.[10]

Minton appealed, and the Federal Circuit affirmed the district court's judgment.[11] The Federal Circuit declined to address the merits of Minton's argument based on the experimental use defense, stating that the district court was within its discretion in deciding not to consider experimental use as a defense and denying Minton's motion for reconsideration, in part because the motion was based

---

[10] *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1379 (Fed. Cir. 2003) (noting that the district court likely denied Minton's motion for reconsideration without considering the newly-raised experimental use defense because it denied Minton's motion "tersely" and "for the reasons previously set forth in the court's memorandum opinion").

[11] *Id.* at 1374, 1381.

on an argument—the experimental use doctrine—that was not previously raised but "has long been a fixture of patent law."[12]

## D.    The Legal Malpractice Action

On August 25, 2004, Minton filed this legal malpractice action against appellees on the ground that they negligently failed to timely plead and brief the experimental use doctrine as a defense to NASD and NASDAQ's showing that the section 102(b) on sale bar invalidated the '643 Patent. Minton alleges that appellees' negligence caused him to lose the Patent Litigation or, in the alternative, caused the Patent Litigation's pretrial dismissal, depriving him of a settlement of $100,000,000.00.

Appellees filed no-evidence and traditional motions for summary judgment attacking the causation element of Minton's malpractice claim.[13] Appellees argued that the experimental use exception did not apply to the TEXCEN Lease and, thus, as a matter of law, their alleged failure to timely plead and brief the defense could not have caused Minton harm in the Patent Litigation. The trial court ruled in

---

[12] … *Id.* at 1379.

[13] … *See* Tex. R. Civ. P. 166a(c), (i).

8

appellees' favor and rendered a take-nothing judgment on all claims.[14] This appeal followed.

### III. Issues on Appeal

Minton presents ten complaints challenging the trial court's summary judgment:

(1)   The trial court erred in ruling that the issue of whether the TEXCEN Lease was primarily for the purposes of experimental use was a question of law.

(2)   The trial court erred as a matter of law by merely holding that the TEXCEN Lease had a commercial purpose rather than holding that the TEXCEN Lease's purpose was "primarily" commercial.

(3)   The trial court erred in concluding as a matter of law that the TEXCEN Lease had a commercial purpose.

(4)   The trial court erred by improperly limiting the application of the experimental use exception to situations where the testing had to be on a required claim of the patent.

(5)   The trial court erred in not considering testing of the invention that was not limited to the internet.

---

[14]... Appellees filed two joint motions, each seeking no-evidence and traditional summary judgments. The second joint motion was filed in response to Minton's first amended original petition, which added a new damages theory—that Minton would have settled the Patent Litigation for at least $100,000,000.00 if his claims in that suit had not been dismissed on summary judgment under the on sale bar. Minton's response to the second joint motion offered no new argument or evidence, but merely incorporated by reference his briefing and evidence filed in response to appellees' first joint summary judgment motion. The trial court granted the relief sought in both joint motions.

(6)    The trial court erred as a matter of law by concluding that expert testimony was required to support the experimental use exception.

(7)    The trial court erred by concluding that there was no evidence to support the experimental use exception.

(8)    The trial court erred as a matter of law by concluding that any evidence tending to show the experimental use exception must be limited to the period up to and including June 28, 1996, the date of the '643 Patent application.

(9)    The trial court abused its discretion in striking Minton's exhibits 32a, 32b, 39, and 40 as hearsay even though they met the hearsay exception for business records.

(10)   The trial court's legal and evidentiary errors probably caused the rendition of an improper judgment and probably prevented Minton from properly presenting the case to this court.

In a single cross-point, appellees complain of the trial court's refusal to strike from the summary judgment record certain evidence submitted by Minton of alleged experimental use.

Before addressing the merits of these complaints, we must decide whether we have subject matter jurisdiction over this case.

## IV.  Subject Matter Jurisdiction

Relying primarily on two decisions of the Federal Circuit,[15] and a decision of the Fifth Circuit that does not involve a legal malpractice claim,[16] Minton contends that we must dismiss this appeal for lack of subject matter jurisdiction because Minton's legal malpractice claim "arises under" the exclusive patent law jurisdiction of the federal courts.  We disagree and conclude that Minton's claim does not confer exclusive subject matter jurisdiction on the federal courts.

Under Texas law, "[w]hen a legal malpractice claim arises from earlier litigation, the plaintiff . . . bears the burden to prove he would have prevailed on the underlying cause of action."[17]  In other words, the plaintiff must prove a case within a case.[18]  Thus, Minton's ability to recover turns on whether he can prove by a preponderance of the evidence that the appellees' allegedly negligent failure to

---

[15]... *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) (holding that state law claim for legal malpractice involving prior patent law litigation "arises under" federal law); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007) (same).

[16]... *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288 (5th Cir. 1997) (holding that an action arises under federal patent law, conferring exclusive federal jurisdiction, when resolution of state claims for breach of contract and fiduciary duty depends on application of federal patent laws).

[17]... *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[18]... *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004).

timely plead and brief "experimental use" caused the dismissal of his patent infringement claims in the Patent Litigation.

A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law."[19]  The fact that treatment of a substantial federal question is necessary to the resolution of a state-law claim is not, however, sufficient to permit federal jurisdiction.  "[T]he presence of a disputed federal issue [in a state cause of action] . . . [is] never necessarily dispositive."[20]  Instead, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[21]  "In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal

---

[19] *… Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S. Ct. 2166, 2174 (1988).

[20] *… Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005); *see Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813–14, 106 S. Ct. 3229, 3234–35 (1986).

[21] *… Grable*, 545 U.S. at 314, 125 S. Ct. at 2368.

jurisdiction will not disturb the balance of federal and state judicial responsibilities."[22]

While the first and second elements of this test may be satisfied here, the third and fourth are not.

The federal issue here is not substantial. Although significant to Minton's claim, the issue of whether there was evidence of experimental use of the technology at issue is predominantly one of fact, with little or no precedential value. Therefore, resolution of the issue will not require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers."[23] The courts of this state are perfectly capable of deciding cases such as this.

Not only is the federal law issue insubstantial, but the exercise of federal jurisdiction over this state-law malpractice claim would disturb the balance between federal and state judicial responsibilities. "Legal malpractice has traditionally been the domain of state law, and federal law rarely interferes with the power of state authorities to regulate the practice of law."[24] To extend federal jurisdiction to every instance in which a lawyer commits alleged malpractice during the litigation of a

---

[22] *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

[23] *Grable*, 545 U.S. at 312, 125 S. Ct. at 2367.

[24] *Singh*, 538 F.3d at 339; *see also Custer v. Sweeney*, 89 F.3d 1156, 1167 (4th Cir. 1996).

13

patent claim (or other federal law claim) would "constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant."[25]

For these reasons, we hold that Minton's legal malpractice claim does not "arise under" federal law.[26]

In so holding, we decline to follow the Federal Circuit's decisions in *Immunocept* and *AMT* for two reasons: First, the Federal Circuit's holdings are not binding on this court. The Supreme Court of Texas has explained that: "While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are obligated to follow only higher Texas courts and the United States Supreme Court."[27] Second, we believe the Federal Circuit misapplied United States Supreme Court precedent by disregarding the federalism analysis that the Supreme Court has applied to restrict the scope of federal "arising under" jurisdiction to a "special and small category" of cases where a substantial question of pure federal

---

[25] ... *Singh*, 538 F.3d at 340.

[26] ... Our holding should not be construed as suggesting that no legal malpractice claims involving patent litigation could possibly arise under federal law. In fact, it is possible that the federal interest in other legal malpractice cases would be sufficiently more substantial, such that federal jurisdiction would be justified. We hold only that federal jurisdiction does not extend to the legal malpractice claim before us.

[27] ... *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (emphasis omitted); *see also City of Carrollton v. Singer*, 232 S.W.3d 790, 797 n.6 (Tex. App.—Fort Worth 2007, pet. denied).

14

law is in dispute that has precedential value.[28]  According to the United States Supreme Court, claims that are "fact-bound and situation-specific," such as the legal malpractice claim at issue in this case, do not fall within the scope of federal "arising under" jurisdiction.[29]  While this result may conflict with Federal Circuit decisions, we are obligated only to follow the rules for determining "arising under" jurisdiction established by the United States Supreme Court.

We now turn to the merits.

---

[28] *See, e.g., Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699–701, 126 S. Ct. 2121, 2136–37 (2006).

[29] *Id.* at 701, 126 S. Ct. at 2137.  Minton's reliance on the Fifth Circuit's opinion in *Scherbatskoy* is misplaced for similar reasons.  *Scherbatskoy* is distinguishable on the facts and was decided prior to the more recent United States Supreme Court decisions that adopted the federalism analysis that governs our decision here.  *Compare Scherbatskoy,* 125 F.3d at 291 (finding federal "arising under" jurisdiction in breach of contract claim based solely on the conclusion that the patent issue "is a necessary element" to the resolution of the claim) *with Empire*, 547 U.S. at 701, 126 S. Ct. at 2137 ("[I]t takes more than a federal element 'to open the arising under door.'") *and Grable*, 545 U.S. at 313–14, 125 S. Ct. at 2367 ("[T]he federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts.").

15

## V. Standards of Review

The trial court's take-nothing summary judgment against Minton was rendered on both traditional and no-evidence motions for summary judgment filed by appellees.

## A. Traditional Summary Judgment

In reviewing a traditional summary judgment, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[30] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[31] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[32] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[33]

---

[30] Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

[31] *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[32] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[33] *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[34] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.[35]

## B.    No-Evidence Summary Judgment

Rule 166a(i) of the Texas Rules of Civil Procedure governs no-evidence summary judgments.[36] Under this rule, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[37] The motion must specifically state the elements for which there is no evidence.[38] The trial court must grant the motion

---

[34] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[35] *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

[36] Tex. R. Civ. P. 166a(i).

[37] *Id.*

[38] *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[39]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[40] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[41] We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.[42]

## VI. Analysis

## A. The Purpose of the TEXCEN Lease was Commercial and There is No Evidence that the Lease was Primarily for Experimental Use

The pivotal questions we must decide in reviewing the trial court's summary judgment are: (1) whether the trial court correctly concluded that the TEXCEN Lease had a commercial purpose as a matter of law (2) and whether the trial court

---

[39] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

[40] *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[41] *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

[42] *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

correctly found that there is no evidence to support Minton's claim of an experimental purpose for the TEXCEN Lease. We conclude that both trial court rulings are correct.

**1. The Commercial Purpose of the Lease was Established as a Matter of Law**

The TEXCEN Lease expressly states that Stark was leasing TEXCEN for commercial use. In its preamble, the lease provides that "[Stark] . . . wishes to lease _TEXCEN_ from TISE for the purpose of opening brokerage accounts and executing trades for individuals using TEXCEN." It further requires Stark to pay for the use of TEXCEN for three years (with an option of up to thirteen years) and warrants that TEXCEN will perform in a workmanlike manner. There is no language in the lease that indicates that the lease had an experimental purpose.

In addition to the express language of the TEXCEN Lease, Minton offered deposition testimony in the Patent Litigation which established that the purpose of the lease was commercial:

Q.    Okay. And they were—now, they were seeking—still seeking the regulatory approval, correct?

A.    Yes, sir.

Q.    ***But subject to that regulatory approval, what was contemplated was that Stark would set up a system using the TEXCEN software program and—to use it commercially, correct?***

A.    *Yes, sir.*

19

Q. And—and that occurred beginning in March 1995, correct?

A. Yes, sir.

Q. *And you expected to benefit financially from that arrangement, correct?*

A. *Yes, sir* (emphasis added).

Based on the language of the TEXCEN Lease and Minton's own testimony establishing the commercial purpose of the lease, we hold that the trial court did not err in concluding that the TEXCEN Lease had a commercial purpose as a matter of law.

**2. There is No Evidence that any Purpose of the TEXCEN Lease was Experimental**

**a. Minton's Claim of an Alleged Experimental Purpose for the TEXCEN Lease Does not Relate to a Claimed Element of the '643 Patent**

The trial court concluded, as a matter of law, that the claims of the '643 Patent do not require that the program work over a TCPIP or internet connection and, thus, any evidence of testing over a TCPIP or internet connection is legally irrelevant to show an experimental purpose for the TEXCEN Lease. We agree with this conclusion.

Under settled patent law, the experimental use doctrine applies only to experimentation that relates to a claimed feature of the invention, either as

expressly stated in a claim or inherent to the subject matter of a claim.[43]  When evaluating whether a feature is claimed by an invention, courts look to details that are "specifically recited or necessary to the invention covered by the claims in suit."[44]  For example, courts have held that testing for durability may negate application of the on sale bar even when durability is not specifically claimed in the patent, but only if durability is inherent to "the nature of the invention" based on "the claims' reference to the subject matter."[45]

Therefore, our inquiry focuses on whether the attributes that Minton testifies were being tested—TEXCEN's ability to process actual trades over an internet connection—relate to a claimed feature of the '643 Patent.  If not, then Minton's

[43] *… Electromotive*, 417 F.3d at 1211 ("It is important to recognize that this court has limited experimentation sufficient to negate a pre-critical date public use or commercial sale to cases where the testing was performed to perfect claimed features, or, in a few instances like the case here, to perfect features inherent to the claimed invention."); *W. Marine Elecs., Inc. v. Furuno Elec. Co.*, 764 F.2d 840, 847 (Fed. Cir. 1985) ("The trial court properly recognized that testing or experimentation performed with respect to non-claimed features of the device does not show that the *invention* was the subject of experimentation."); *In re Theis*, 610 F.2d 786, 793 (C.C.P.A. 1979) ("It is settled law that the experimental sale exception does not apply to experiments performed with respect to nonclaimed features of an invention.").

[44] *… Gould Inc. v. United States*, 579 F.2d 571, 582 (Ct. Cl. 1978); *see also Honeywell Int'l. Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 998 (Fed. Cir. 2007).

[45] *… EZ Dock*, 276 F.3d at 1351–53; *see also Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1540 (Fed. Cir. 1997); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 551 (Fed. Cir. 1990).

testimony regarding this testing will not, as a matter of law, support experimental use.[46]

Minton contends that testing TEXCEN over the internet is a claimed feature of the '643 Patent because the patent claims that it will work over "a public communication network" and that the internet is one such network. However, the patent specifies that "[t]he method by which users . . . communicate with [the]

---

[46] ... Minton asserts that the trial court committed error by using this standard because experimental use is supported by any testing needed to convince the inventor that the invention is capable of performing its intended purpose in its intended environment. *See Gould*, 579 F.2d at 583. Testing, however, only supports experimental use in instances where it expressly or inherently relates to a claimed feature. *See, e.g.*, *Kolmes*, 107 F.3d at 1540 (holding testing for durability established experimental use because, based on "the preamble of claim 1 [of the patent]," an "inherent feature" of the invention is "the ability to withstand use in an environment such as a meat-packing plant with repeated laundering"); *Gould*, 579 F.2d at 582 (holding experimental use exception did not apply where "the work done was not directed toward the invention covered by the claims in suit, the overall engine configuration, but was directed toward scaling-up [increasing the output horsepower of] the engine and checking and adjusting the performance of component parts"). Additionally, there is no probative value to an inventor's subjective characterizations of an offer for sale as experimental when first expressed only after a patent infringement action has been filed. *See, e.g.*, *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1370 (Fed. Cir. 2007); *Electromotive*, 417 F.3d at 1212; *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1150 (Fed. Cir. 1983) ("[I]f a mere allegation of experimental intent were sufficient, there would rarely if ever be room for summary judgment based on a true 'on sale' defense under 35 U.S.C. § 102(b)."). Subjective assertions of experimental use in Minton's deposition and affidavit testimony generated in the Patent Litigation, including his affidavit testimony that the primary purpose of the TEXCEN Lease was "to be able to test and further develop the program," are not evidence of experimental use absent supporting objective relevant evidence predating the Patent Litigation.

22

server . . . is not important, as the present invention simply requires that the users be able to send and receive information to [the] server."[47] The patent also provides a nonexclusive list of communication methods that may be employed, including "public telephone lines," "cable modems, local area networks [LANs], wireless communications, fiber optics lines, and others."[48]

Because the express language of the '643 Patent conclusively demonstrates that performance over the internet is not inherent to any claimed feature of the patent, we hold that the trial court did not err in concluding that there is no evidence to support Minton's claims of experimental use because evidence of testing over the internet is legally irrelevant to show an experimentation purpose for the TEXCEN Lease.

---

[47] ... '643 Patent, col. 7, ll. 25–28.

[48] ... *Id.* at col. 7, ll. 20, 24–25.

### b. Even Assuming Testing Over the Internet Relates to a Claimed Feature of the '643 Patent, There is no Evidence to Support Minton's Claim that the Purpose of the TEXCEN Lease was Experimental

The trial court found that, assuming Minton's evidence of testing relating to a TCPIP or internet connection is relevant, Minton still did not produce sufficient evidence to raise a genuine issue of material fact to support his claim of experimental use.[49] We agree with the trial court's finding because Minton presented no probative evidence that Stark was actually aware that the purpose of the offer for sale was primarily experimental when the lease was executed.[50]

The determination of experimental use is an objective inquiry based on the facts surrounding the transaction.[51] Courts have considered a number of objective factors when making an experimental use determination, including, but not limited to:

> (1) the necessity for public testing, (2) the amount of control over the experiment retained by the inventor, (3) the nature of the invention, (4) the length of the test period, (5) whether payment was made, (6) whether there was a secrecy obligation, (7) whether records of the

---

[49] … If there is no evidence that the TEXCEN Lease had an experimental purpose, then the lease could not have been "primarily" experimental in purpose so as to negate the on sale bar.

[50] … *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (when trial court grants summary judgment on fewer than all grounds asserted, appellate court may affirm summary judgment on other grounds properly raised in the trial court).

[51] … *Electromotive*, 417 F.3d at 1210; *Allen Eng'g Corp.*, 299 F.3d at 1354.

experiment were kept, (8) who conducted the experiment, (9) the degree of commercial exploitation during testing, (10) whether the invention reasonably requires evaluation under actual conditions of use, (11) whether testing was systematically performed, (12) whether the inventor continually monitored the invention during testing, and (13) the nature of contacts made with potential customers.[52]

With regard to the last factor — nature of contacts made with potential customers — the Federal Circuit has held that a customer's awareness that the purpose of the sale was for experimental use is a "critical attribute of experimentation."[53] If an inventor fails to communicate to a customer that the sale of the invention was made in pursuit of experimentation, then the customer, as well as the general public, can only view the sale as a normal commercial transaction.[54] "[An inventor's] failure to communicate to any of the purchasers or prospective purchasers of his device that the sale or offering was for experimental use is fatal to his case."[55] In other words, customer awareness of the sale or offering's experimental purpose is dispositive.[56]

---

[52] … *Allen Eng'g Corp.*, 299 F.3d at 1353; *see also Electromotive*, 417 F.3d at 1210.

[53] … *Electromotive*, 417 F.3d at 1214.

[54] … *In re Dybel*, 524 F.2d 1393, 1401 (C.C.P.A. 1975); *see also Paragon Podiatry Lab.*, 984 F.2d at 1186.

[55] … *In re Dybel*, 524 F.2d at 1401.

[56] … *See, e.g., Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir. 1996), *cert. denied*, 522 U.S. 806 (1997); *In re Hamilton*, 882 F.2d 1576, 1581 (Fed. Cir. 1989).

In his deposition testimony, Minton admitted that he never told Stark that the purpose of the TEXCEN Lease was to develop, test, or conduct experimentation on TEXCEN. Indeed, the summary judgment record contains no evidence showing that Stark was aware at the time the lease was executed that it was for experimental purposes. At most, the evidence on which Minton relies to establish Stark's awareness of the lease's experimental purpose merely shows that Stark knew at the time the lease was executed that TEXCEN was under development and that it may require further testing. This evidence does not prove that the purpose of the lease was experimental.[57] Nor does Minton's subjective characterization of the purpose of the lease made after the Patent Litigation constitute sufficient probative evidence to establish that Stark was aware of any alleged experimental use.[58]

Because there is no evidence that Stark was aware that the actual purpose of the TEXCEN Lease was experimental, we hold that, even assuming testing over

---

[57] ... *Allen Eng'g Corp.*, 299 F.3d at 1354; *see also Scaltech*, 178 F.3d at 1384 n.1 ("Commercial exploitation, if not incidental to the primary purpose of experimentation, will result in an on sale bar, even if the invention was still in its experimental stage.").

[58] ... *See, e.g., Cargill*, 476 F.3d at 1370; *Electromotive*, 417 F.3d at 1212, 1214; *Petrolite*, 96 F.3d at 1427; *Paragon Podiatry Lab.*, 984 F.2d at 1186; *Sinskey v. Pharmacia Ophthalmics, Inc.*, 982 F.2d 494, 499 (Fed. Cir. 1992), *cert. denied*, 508 U.S. 912 (1993); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1071–72 (Fed. Cir. 1992); *D.L. Auld Co.*, 714 F.2d at 1150.

the internet is relevant to a claimed element of the '643 Patent, the trial court did not err in finding that Minton failed to raise a genuine issue of material fact on his claim that the TEXCEN Lease had an experimental purpose. Therefore, as a matter of law, the lease was not *primarily* experimental in purpose and Minton has no defense to the on sale bar under the experimental use doctrine.

## VII. Conclusion

In sum, we hold that Minton's legal malpractice claim does not "arise under" federal law, and that we have jurisdiction over this appeal. We further hold that the trial court did not err in granting appellees' traditional motion for summary judgment based on its conclusion that the TEXCEN Lease had a commercial purpose as a matter of law, and in granting appellees' no-evidence motion for summary judgment on the ground that Minton failed to produce sufficient relevant evidence to raise a genuine issue of material fact to support his claim of experimental use.[59] The trial court's summary judgment is affirmed.

JOHN CAYCE
CHIEF JUSTICE

PANEL: CAYCE, C.J.; GARDNER and WALKER, JJ.

---

[59] In light of these holdings, we need not reach Minton's other issues or appellees' cross-point. *See* Tex. R. App. P. 47.1.

WALKER, J. filed a dissenting opinion.

DELIVERED: October 8, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

## NO. 2-06-443-CV

---

VERNON F. MINTON                                              APPELLANT

V.

JERRY W. GUNN, INDIVIDUALLY;                                  APPELLEES
WILLIAMS SQUIRE & WREN, LLP; JAMES
E. WREN, INDIVIDUALLY; SLUSSER &
FROST, L.L.P.; WILLIAM C. SLUSSER,
INDIVIDUALLY; SLUSSER WILSON &
PARTRIDGE, L.L.P; AND MICHAEL E.
WILSON, INDIVIDUALLY

------------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

# DISSENTING OPINION

------------

## I. INTRODUCTION

I respectfully dissent. Because the federal courts possess exclusive

jurisdiction over Appellant Vernon F. Minton's legal malpractice suit against

Appellees Jerry W. Gunn, individually; Williams Squire & Wren, LLP; James E.

Wren, individually; Slusser & Frost, L.L.P.; William C. Slusser, individually; Slusser Wilson & Partridge, L.L.P.; and Michael E. Wilson, individually, I would grant Minton's motion to dismiss, vacate the trial court's order granting summary judgment for Appellees, and remand the case to the trial court for disposition in accordance with this opinion.

## II. FACTS

### A. Minton's Patent Infringement Suit in Federal Court

In the underlying litigation giving rise to Minton's legal malpractice claim, Minton sued NASD and NASDAQ Stock Market, Inc. in the United States District Court for the Eastern District of Texas for patent infringement.[1] The federal trial court granted NASD and NASDAQ's "Motion for Summary Judgment that [the '643 Patent] is Invalid under the 'On Sale' Bar Provision of 35 U.S.C. § 102(b)." *See* 35 U.S.C.A. § 102(b) (West 2001). The trial court granted summary judgment for NASD and NASDAQ based on the on sale bar rule, and the Court of Appeals for the Federal Circuit affirmed the trial court's summary judgment. *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003).

### B. Minton's Legal Malpractice Suit in State Court

Minton subsequently filed a legal malpractice suit in state court; his original petition asserted that Appellees, his attorneys in the underlying federal patent

---

[1] Minton alleged that NASD and NASDAQ have "infringed and continued to infringe claims 1, 2, 3 and 4" of U.S. Patent No. 6,014,643 (the '643 Patent).

infringement suit, negligently did not plead or brief the experimental use exception to the on sale bar rule in an amended petition, in Minton's summary judgment response, or in the response to the trial court's request for briefing. These allegations are the sole basis for Minton's legal malpractice suit; he pleaded that Appellees owed a duty to represent him in his patent infringement suit within the applicable standard of care and that they breached their duty to him by "[f]ailing to timely plead and brief the experimental use defense."

Appellees filed two joint combined traditional and no-evidence motions for summary judgment in Minton's state legal malpractice action asserting that "the record establishes as a matter of law that Defendants' conduct did not proximately cause Minton's alleged damages because Minton would not have been able to successfully defeat the on sale bar either at the summary judgment stage or at trial." The trial court granted both Appellees' joint motions for summary judgment. This appeal followed, and Minton filed a motion to dismiss, alleging that the federal courts possess exclusive jurisdiction over his legal malpractice suit.

### III. THE LAW CONCERNING SECTION 1338 JURISDICTION

The United States Code provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . .

3

cases." 28 U.S.C.A. § 1338(a) (West 2006).[2] The United States Supreme Court has for nearly 100 years recognized that in certain cases federal question jurisdiction will lie over state law claims that implicate significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2367 (2005).

A significant federal issue is implicated when a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law in that federal law is a necessary element of the well-pleaded complaint. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S. Ct. 2166, 2174 (1988). The well-pleaded complaint rule is the starting point in analyzing Section 1338 jurisdiction in suits involving patents. *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). Under this "well-pleaded complaint" rule, whether the claim arises under federal patent law "'must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S. Ct. 724, 724 (1914)). The complaint must do more than demonstrate that a question of federal patent law is "lurking in the background."

---

[2] ... Hereinafter referred to as "Section 1338."

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12, 103 S. Ct. 2841, 2847 (1983). A complaint successfully establishes that a plaintiff's right to relief necessarily depends on a substantial question of patent law and that federal law is a necessary element of the well-pleaded complaint when from the plaintiff's pleading, it appears that some right or privilege will be defeated by one construction or sustained by the opposite construction of patent laws. *Christianson*, 486 U.S. at 807–08, 108 S. Ct. at 2173.[3] But a pleaded claim supported by alternative theories in the complaint may not form the basis for Section 1338 jurisdiction unless patent law is essential to each of those theories. *Id.* at 812, 108 S. Ct. at 2175–76 (recognizing, in applying well-pleaded complaint doctrine, that although the patent issue could be an element of the plaintiff's

---

[3] *See also Univ. Of W. Va. Bd. of Trs. v. VanVoorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002) (holding Section 1338 jurisdiction existed over state law claim alleging breach of duty to assign a patent because claim required resolution of the disputed patent application); *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000) (holding Section 1338 jurisdiction existed over state law breach of contract claim requiring proof of patent infringement); *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1329 (Fed. Cir. 1998) (holding Section 1338 jurisdiction existed over state law claim of injurious falsehood when plaintiff was required to prove invalidity of patent), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358–59 (Fed. Cir. 1999), *and cert. denied*, 525 U.S. 1143 (1999); *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 291 (5th Cir. 1997) (holding Section 1338 jurisdiction existed over state law breach of contract claim when plaintiff was required to prove patent infringement); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 477–78 (Fed. Cir. 1993) (holding Section 1338 jurisdiction existed over state law business disparagement claim that required proof of patent non-infringement).

monopolization antitrust theory and plaintiff's group-boycott antitrust theory, plaintiff's complaint also pleaded reasons completely unrelated to the provisions and purposes of federal patent law why the plaintiff might be entitled to the relief sought so that plaintiff's claims did not "arise under" Section 1338).

In determining whether federal question jurisdiction exists, in addition to examining whether a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law in that federal law is a necessary element of the well-pleaded complaint, courts must also conduct a federalism analysis. *Grable*, 545 U.S. at 313–14, 125 S. Ct. at 2367–68. That is, courts must also examine whether federal court jurisdiction over a state claim implicating a substantial question of federal law is consistent with congressional judgment regarding the proper division of labor between state and federal courts. *Id.* 125 S. Ct. at 2367. Stated another way, courts must inquire whether a federal forum may entertain the state claim raising a disputed, substantial federal issue without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 314, 125 S. Ct. at 2368. When Congress has not provided a federal, private remedy for the violation of a particular federal statute, the presence of an issue concerning that statute as an element of a state tort claim is not ordinarily considered "substantial" enough to confer federal question jurisdiction. *See Franchise Tax Bd.*, 463 U.S. at 21–22, 103 S. Ct. at 2852 (holding federal question jurisdiction did not exist over a declaratory judgment suit

6

brought by state taxing authorities concerning the application of a state statute to an ERISA qualified trust); *see also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814, 106 S. Ct. 3229, 3235 (1986) (holding federal question jurisdiction did not exist over state tort claim that pharmaceutical company had misbranded drug Bendectin in violation of Federal Food, Drug, and Cosmetic Act).

## IV. SECTION 1338 JURISDICTION OVER MINTON'S LEGAL MALPRACTICE CLAIM

### A. Minton's Well-Pleaded Complaint

Starting with a well-pleaded complaint analysis, Minton's petition does establish that his right to relief in his state legal malpractice suit necessarily depends on resolution of a substantial question of federal patent law. *See Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174. As Appellees and the Majority Opinion acknowledge, to prevail in his legal malpractice claim, Minton must prove a "suit within a suit." *See Alexander v. Turtur Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (articulating suit within a suit requirement). That is, to prevail when the asserted legal malpractice involves the results of prior litigation, the plaintiff bears the additional burden of proving that, "but for" the attorney's breach of duty, he would have won in the underlying litigation and would have been entitled to judgment. *See, e.g.*, *Schlager v. Clements*, 939 S.W.2d 183, 186–87 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

7

Turning specifically to Minton's original pleading, he asserted one cause of action against Appellees—negligence. He asserted as the sole basis for his negligence pleading one theory of negligence by Appellees—the failure to timely plead and brief the experimental use exception in response to Appellees' assertion of the on sale bar rule. Thus, in his state legal malpractice claim, Minton must prove that "but for" Appellees' alleged negligence, he would have prevailed on every element of his patent infringement suit against NASD and NASDAQ, including application of the experimental use exception to the on sale bar rule and damages from NASD and NASDAQ's alleged infringement and continued infringement of claims 1, 2, 3, and 4 of the '643 Patent.

## B. A Disputed, Substantial Issue of Federal Patent Law

When a state legal malpractice claim requires the hypothetical adjudication of the merits of an underlying federal patent infringement lawsuit—that is, trial of the patent infringement suit within the legal malpractice suit—the legal malpractice case presents a disputed, substantial question of federal patent law conferring Section 1338 jurisdiction on the federal courts. *See, e.g.*, *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272–73 (Fed. Cir. 2007)[4] (holding federal courts possessed exclusive Section 1338 jurisdiction over Texas state legal malpractice claim stemming from underlying federal patent infringement

---

[4]... Hereinafter referred to as "*AMT*."

suit); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1284 (Fed. Cir. 2007) (same, stemming from underlying claims for patent infringement, comparison of patent application, and patent scope). That is, when the plaintiff must plead and prove his entire underlying patent infringement suit to satisfy the "but for" causation requirement of his state legal malpractice claim, the state legal malpractice claim presents a disputed, substantial issue of federal patent law. *See AMT*, 504 F.3d at 1272 (explaining that "patent infringement is disputed, for there is no concession by Akin Gump that the [defendants] infringed AMT's patents, and the issue is substantial, for it is a necessary element of the malpractice case"); *Immunocept*, 504 F.3d at 1285 (holding that "[b]ecause it is the sole basis of [plaintiff's state law legal malpractice claim], the claim drafting error is a necessary element of the malpractice cause of action" and triggers Section 1338 jurisdiction). Numerous courts have followed the holdings of *AMT* and *Immunocept*; federal courts have denied motions to remand state legal malpractice claims stemming from underlying patent litigation and state courts have dismissed such actions, holding Section 1338 jurisdiction existed.[5]

---

[5] *… See, e.g.*, *Tomar Elecs., Inc. v. Watkins*, No. 2:09-cv-00170-PHX-ROS, 2009 WL 2222707, at *1–2 (D. Ariz. July 23, 2009) (order on motion to remand) (holding federal courts possessed exclusive Section 1338 jurisdiction over state law legal malpractice stemming from patent infringement suit); *see also, e.g.*, *LaBelle v. McGonagle*, No. 07-12097-GAO, 2008 WL 3842998, at *2–4 (D. Mass. Aug. 15, 2008) (opinion and order, not reported) (same, stemming from negligent failure to file patent application); *Byrne v. Wood, Herron & Evans, LLP*, No. 2: 08-102-DCR, 2008 WL 3833699, at *4–5 (E.D. Ky. Aug. 13, 2008) (mem.

9

In summary, it is clear from Minton's legal malpractice pleading that his right to recover from Appellees in his legal malpractice suit will be defeated by one construction or sustained by the opposite construction of the patent laws concerning the on sale bar rule, concerning the experimental use exception, and ultimately concerning NASD's and the NASDAQ's alleged infringement to claims 1, 2, 3 and 4 of the '643 Patent.[6]  *See Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174.  Minton pleaded no alternative "theories" of recovery in his legal malpractice suit—the sole allegation of negligence against Appellees is that in Minton's patent

---

op. and order, not reported) (holding federal courts possessed exclusive Section 1338 jurisdiction over state legal malpractice claim stemming from patent infringement suit); *Lockwood v. Sheppard, Mullin, Richter & Hampton*, 93 Cal. Rptr. 3d 220, 228–29 (Cal. Ct. App. 2009) (holding federal courts possessed exclusive Section 1338 jurisdiction over state law claims stemming from opposing attorney's alleged action in obtaining patent reexamination); *TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold, L.L.P.*, No. 08AP-693, 2009 WL 790314, at *4–5 (Ohio Ct. App. Mar. 26, 2009) (holding federal courts possessed exclusive Section 1338 jurisdiction over state law legal malpractice claim stemming from failure to pay patent maintenance fees or to seek revival of patent).

[6] Both the on sale bar rule and the experimental use exception to the application of the on sale bar rule are part and parcel of Minton's patent infringement lawsuit.  *See* 35 U.S.C.A. § 102(b); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1353 (Fed. Cir. 2002).  They are not stand-alone doctrines or claims that may be plucked from a federal patent infringement lawsuit and, somehow, not present substantial issues of federal patent law when a patent infringement lawsuit itself presents a substantial question of federal patent law triggering Section 1338 jurisdiction.  *See* 28 U.S.C.A. § 1338(a) (providing exclusive, original federal court jurisdiction over "any civil action arising under any Act of Congress relating to patents"); *AMT*, 504 F.3d at 1270 (recognizing that in the case-within-a-case context the on sale bar rule is "not the sort of jurisdiction defeating defense[] contemplated by *Christianson*").

10

infringement suit they negligently failed to plead and brief the experimental use exception after NASD and NASDAQ moved for summary judgment on the basis of the on sale bar rule. Thus, application of the well-pleaded complaint doctrine and examination of whether Minton's right to relief in his state legal malpractice suit necessarily depends on resolution of a substantial question of federal patent law both compel the conclusion that Minton's state legal malpractice claim raises a disputed, substantial issue of federal patent law. *See AMT*, 504 F.3d at 1269 (holding, "[b]ecause proof of patent infringement is necessary to show AMT would have prevailed in the prior litigation, patent infringement is a 'necessary element' of AMT's malpractice claim and therefore apparently presents a substantial question of patent law conferring § 1338 jurisdiction"); *Immunocept*, 504 F.3d at 1285 (recognizing "a determination of patent infringement serves as the basis of § 1338 jurisdiction over related state law claims"); *see also Christianson*, 486 U.S. at 809, 108 S. Ct. at 2174; *accord Marsh v. Austin-Fort Worth Coca-Cola Bottling Co.*, 744 F.2d 1077, 1079 (5th Cir. 1984) (holding Court of Appeals for the Federal Circuit possessed exclusive jurisdiction over summary judgment granted by federal district court for defendants on the basis that plaintiff "lost his patent rights" under 35 U.S.C. § 102—the on sale bar rule—by displaying his invention at a convention before he applied for a patent even though plaintiff asserted state law claims and filed in federal court based on diversity of citizenship).

**C. Disagreement with the Majority Opinion's Federal Question Analysis**

11

The Majority Opinion holds that in Minton's legal malpractice claim "the federal issue is insubstantial."  To reach this holding, despite the plethora of case law specifically addressing Section 1338 jurisdiction in state claims alleging legal malpractice during federal patent litigation,[7] the Majority Opinion chooses to follow *Singh v. Duane Morris, L.L.P*, 538 F.3d 334, 338 (5th Cir. 2008).  *Singh* is a Fifth Circuit case in which legal malpractice was alleged to have occurred during *trademark* litigation.  *Id*.  The *Singh* opinion itself limited its holding to Section 1338 jurisdiction in suits alleging malpractice during *trademark* litigation and expressly declined to extend its holding to suits alleging malpractice during *patent* litigation. The Fifth Circuit stated,

> It is possible that the federal interest in patent cases is sufficiently more substantial, such that it might justify federal jurisdiction.  But we need not decide the question before the Federal Circuit [in *AMT*], because it is not before us.  We conclude only that jurisdiction does not extend to malpractice claims involving trademark suits like this one.

*Id.* at 340.  I cannot agree with the Majority Opinion that the *Singh* opinion, having expressly declined to extend its holding to malpractice claims involving patent suits, has any application to the Section 1338 jurisdictional analysis of Minton's malpractice claim involving a patent suit.

### D.  Federalism Analysis

---

[7][...] *See, e.g.*, *AMT*, 504 F.3d at 1272; *Immunocept,* 504 F.3d at 1285; *see also Tomar Elecs., Inc.*, 2009 WL 2222707, at *1–2; *LaBelle*, 2008 WL 3842998, at *2–4; *Byrne*, 2008 WL 3833699, at*4–5; *TattleTale Portable Alarm Sys.*, 2009 WL 790314, at *4–5.

A determination that a state law claim presents a disputed, substantial issue of federal patent law does not end a Section 1338 jurisdictional query. *Grable*, 545 U.S. at 314, 125 S. Ct. at 2367. As previously mentioned, courts must also examine whether federal court jurisdiction over a state claim implicating a substantial question of federal law is consistent with congressional judgment regarding the proper division of labor between state and federal courts. *Id.* at 314, 125 S. Ct. at 2368.

Moving to the required examination of whether a federal court's exercise of subject matter jurisdiction over Minton's state legal malpractice claim is consistent with congressional judgment regarding the proper division of labor between state and federal courts, the answer is clearly that it is. *See id.* at 314, 125 S. Ct. at 2368. As recognized by the Court of Appeals for the Federal Circuit in determining that Section 1338 jurisdiction existed over a Texas legal malpractice claim stemming from an underlying patent infringement suit—like Minton's,

> There is a strong federal interest in the adjudication of patent infringement claims in federal court because patents are issued by a federal agency. The litigants will also benefit from federal judges who have experience in claim construction and infringement matters. *See Grable*, 545 U.S. at 315, 125 S. Ct. 2363; *see also Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1341 (Fed. Cir. 2003) (stating that patent infringement involves a two-step process where the court first determines the scope and meaning of the asserted claims and then compares the construed claims to the accused product). Under these circumstances, patent infringement justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312, 125 S. Ct. 2363. In § 1338, Congress considered the federal-state

13

division of labor and struck a balance in favor of this court's entertaining patent infringement. For us to conclude otherwise would undermine Congress's expectations.

*AMT*, 504 F.3d at 1272. Likewise, in *Immunocept*, the Court of Appeals for the Federal Circuit reiterated that Congress's intent to remove non-uniformity in patent law, as evidenced by its enactment of the Federal Courts Improvement Act of 1982, was further indicium that Section 1338 jurisdiction existed over a Texas state legal malpractice claim stemming from attorneys' alleged negligent claim drafting in a patent application. 504 F.3d at 1285. For the reasons articulated in the *AMT* and the *Immunocept* opinions, by enacting Section 1338, Congress considered the federal-state division of labor and struck a balance in favor of the federal courts for patent infringement issues. *AMT*, 504 F.3d at 1272; *Immunocept*, 504 F.3d at 1285.

Minton's state suit, unlike the state litigation *Franchise Tax Board* and *Merrell Dow Pharmaceutical, Inc.*, is not based on a violation of a federal statute for which Congress has provided no private federal remedy. *See Franchise Tax Bd.*, 463 U.S. at 21–22, 103 S. Ct. at 2852 (ERISA); *Merrell Dow Pharms. Inc.*, 478 U.S. at 814, 106 S. Ct. at 3235 (FDCA). Minton's suit is based on alleged malpractice during the pursuit of an authorized, private, exclusively federal remedy for patent infringement. *See* 28 U.S.C.A. § 1338(a) (granting federal district courts exclusive jurisdiction over patent cases). In fact, Minton must prove his entire private, federal cause of action for patent infringement as an element of his state law claim. Thus,

14

a federalism analysis of Minton's state legal malpractice claim weighs in favor of the congressional intent expressed in Section 1338 that federal courts exercise original, exclusive jurisdiction over patent infringement issues. *See AMT*, 504 F.3d at 1272; *Immunocept*, 504 F.3d at 1285.

### E. Disagreement with the Majority Opinion's Federalism Analysis

The Majority Opinion holds that "the exercise of federal jurisdiction over this [Minton's] state-law malpractice claim would disturb the balance between federal and state judicial responsibilities." Majority Op. at 13. In reaching this conclusion, the Majority Opinion expressly declines to follow *AMT*'s and *Immunocept*'s federalism analysis for three reasons. First, the Majority Opinion chooses to give no precedential value to the jurisdictional determinations of the Court of Appeals for the Federal Circuit. Second, the Majority Opinion claims that in both *AMT* and *Immunocept*, the Court of Appeals for the Federal Circuit "misapplied United States Supreme Court precedent by disregarding the federalism analysis that the Supreme Court has applied to restrict the scope of federal 'arising under jurisdiction.'" Majority Op. at 14–15. And third, the Majority Opinion summarily concludes that application of the on sale bar rule and the experimental use exception in Minton's state legal malpractice suit are fact-bound and situation-specific issues. I cannot agree with any of these propositions.

Concerning the precedential value to be given the jurisdictional determinations of the Court of Appeals for the Federal Circuit, the Majority Opinion

15

cites *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294 (Tex. 1993), in support of its decision to give no precedential value to *AMT*'s and *Immunocept*'s federalism analysis. *Penrod Drilling*, however, does not support the Majority Opinion's position. *Penrod Drilling* actually holds that a court of appeals erred by following Fifth Circuit precedent and by summarily disregarding all contrary federal authority, just as the Majority Opinion here does by following the Fifth Circuit's *Singh* decision and disregarding contrary federal authority. Majority Op. at 11–15; *see Singh*, 868 S.W.2d at 296–97.

Concerning the Majority Opinion's conclusion that in both *AMT* and *Immunocept* the Court of Appeals for the Federal Circuit "misapplied United States Supreme Court precedent by disregarding the federalism analysis that the Supreme Court has applied [in *Grable* and *Empire Healthchoice Assurance, Inc. v. McVeigh*[8]] to restrict the scope of federal 'arising under jurisdiction,'" I simply cannot agree. Both *AMT* and *Immunocept* were decided in 2007 after *Grable* and *Empire*. *See Grable*, 545 U.S. at 308, 125 S. Ct. at 2363 (decided in 2005); *Empire*, 547 U.S. at 677, 126 S. Ct. at 2136–37 (decided in 2006). Moreover, as set forth above, both *AMT* and *Immunocept* actually cite *Grable* and expressly discuss the federalism analysis required by *Grable* and *Empire*. *See AMT*, 504 F.3d at 1272; *Immunocept*, 504 F.3d at 1285. The Majority Opinion does not posit exactly how the federalism

_____

[8] ... 547 U.S. 677, 699–701, 126 S. Ct. 2121, 2137–37 (2006).

16

analysis of the Court of Appeals for the Federal Circuit is purportedly deficient in *AMT* and in *Immunocept*; no deficiency is apparent to me.

In conducting the required federalism analysis in *AMT*, the Court of Appeals for the Federal Circuit expressly recognized "a strong federal interest in the adjudication of patent infringement claims in federal court because patents are issued by a federal agency." *AMT*, 504 F.3d at 1272; *see also Immunocept*, 504 F.3d at 1285. The Court of Appeals for the Federal Circuit explained that "[t]he litigants will also benefit from federal judges who have experience in claim construction and infringement matters." *AMT*, 504 F.3d at 1272 (citing *Grable*, 545 U.S. at 315, 125 S. Ct. at 2363); *see also Immunocept*, 504 F.3d at 1285 (citing *Grable* and explaining, "Litigants will benefit from federal judges who are used to handling these complicated rules"). The Court of Appeals for the Federal Circuit explicitly stated that a state claim requiring proof of patent infringement justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *AMT*, 504 F.3d at 1269; *see also Immunocept*, 504 F.3d at 1285 (recognizing that the intent of Congress to remove non-uniformity in the patent laws via the enactment of the Federal Courts Improvement Act of 1982 is a further indication of federal question jurisdiction in a state legal malpractice suit requiring the proof of an entire underlying patent infringement lawsuit). The Court of Appeals for the Federal Circuit noted that "[i]n § 1338, Congress considered the federal-state division of labor and struck a balance in favor of this court's

17

entertaining patent infringement." *AMT,* 504 F.3d at 1272; *Immunocept*, 504 F.3d at 1286. Finally, the Court of Appeals for the Federal Circuit in *AMT* held that "[f]or us to conclude otherwise would undermine Congress's expectations." *AMT,* 504 F.3d at 1272. Thus, the Court of Appeals for the Federal Circuit in *AMT* and in *Immunocept* did conduct the required federalism analysis and reached the exact opposite conclusion of the Majority Opinion's holding that "the exercise of federal jurisdiction over this state-law malpractice claim would disturb the balance between federal and state judicial responsibilities." Majority Op. at 13. The Court of Appeals for the Federal Circuit held that the exercise of *state* jurisdiction over a state legal malpractice claim like Minton's requiring a "trial within a trial" of the underlying patent infringement suit would disturb the congressionally mandated balance between federal and state judicial responsibilities. *See AMT*, 504 F.3d at 1272; *Immunocept*, 504 F.3d at 1285-86.

Finally, the Majority Opinion holds that Section 1338 jurisdiction is not triggered because application of the on sale bar rule and the experimental use exception in Minton's legal malpractice claim are "fact-bound and situation-specific" issues. Majority Op. at 15 (citing *Empire*, 547 U.S. at 699–701, 126 S. Ct. at 2136). The "fact-bound and situation-specific" aspect of the Majority Opinion's analysis is clearly incorrect. It puts the cart before the horse; a court cannot look past the jurisdictional issue, examine the merits of state court summary judgment evidence, decide that issues are fact-bound and situation-specific, and then use its decision

18

on the merits to retroactively defeat Section 1338 jurisdiction. Instead, as outlined above, Section 1338 jurisdiction is to be determined based on the well-pleaded complaint doctrine and a federalism analysis, not on summary judgment evidence or non-evidence or the fact that the case was subsequently disposed of by summary judgment. *See Lockwood*, 93 Cal. Rptr. 3d at 228–29 (explaining that trial court should have dismissed for lack of subject matter jurisdiction, not granted summary judgment, and rejecting defense's argument that these two outcomes are equivalent). For these reasons, I cannot agree with the Majority Opinion's federalism analysis.

## V. CONCLUSION

I would hold that the federal courts possess Section 1338 jurisdiction over Minton's state legal malpractice suit that requires proof of every element of his underlying patent infringement suit. I would grant Minton's motion to dismiss, vacate the trial court's order granting summary judgment for Appellees, and remand the case to the trial court for disposition in accordance with this opinion.

SUE WALKER
JUSTICE

DELIVERED: October 8, 2009

20