# United States Court of Appeals for the Federal Circuit

2007-1035

AIR MEASUREMENT TECHNOLOGIES, INC., NORTH-SOUTH CORPORATION,
and LOUIS HERBERT STUMBERG,

Plaintiffs-Appellees,

v.

AKIN GUMP STRAUSS HAUER & FELD, L.L.P.,
BRANSCOMB, P.C, (also known as Mathews & Branscomb, P.C.),

Defendants-Appellants.

Paul V. Storm, Storm LLP, of Dallas, Texas, argued for plaintiffs-appellees. With him on the brief were Robin L. Barnes and Chris J. Kling. Of counsel was John W. MacPete. Of counsel on the brief were Harrie Samaras, RatnerPrestia P.C., of Valley Forge, Pennsylvania; Bernard Wm. Fischman, The Ariel House, of San Antonio, Texas; and Richard Tinsman, Tinsman & Sciano, Inc., of San Antonio, Texas.

E. Joshua Rosenkranz, Heller Ehrman LLP, of New York, New York, argued for defendants-appellants. With him on the brief was Randy J. Kozel.

Appealed from: United States District Court for the Western District of Texas

Judge W. Royal Furgeson

# United States Court of Appeals for the Federal Circuit

2007-1035

AIR MEASUREMENT TECHNOLOGIES, INC., NORTH-SOUTH CORPORATION,
and LOUIS HERBERT STUMBERG,

Plaintiffs-Appellees,

v.

AKIN GUMP STRAUSS HAUER & FELD, L.L.P.,
BRANSCOMB, P.C, (also known as Mathews & Branscomb, P.C.),

Defendants-Appellants.

_____

DECIDED:  October 15, 2007
_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and RADER, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

This is a legal malpractice case between non-diverse parties based on alleged errors by counsel in patent prosecution and patent litigation.  The case was filed in state court and then removed to federal court.  Akin Gump Strauss Hauer & Feld, L.L.P. and Branscomb, P.C. (collectively "Akin Gump") appeal the interlocutory decision of the United States District Court for the Western District of Texas denying their motion to remand Air Measurement Technologies, Inc., North-South Corporation, and Louis Herbert Stumberg's (collectively "AMT's") lawsuit, which motion asserted want of subject matter jurisdiction under federal patent law, 28 U.S.C. § 1338.  <u>Air Measurement Techs., Inc. v. Akin Gump</u>, No. SA-03-CA-0541 (W.D. Tex. Sept. 29, 2006).  Because

we conclude that the patent infringement question is a necessary element of AMT's malpractice claim and raises a substantial, contested question of patent law that Congress intended for resolution in federal court, we affirm.

I

AMT alleged the following facts in their complaint, which we accept as true for purposes of this appeal. Stumberg and his partner James A. Fulton (now deceased and not a party to the action) developed technology for a safety device for firemen and other emergency personnel who require supplemental oxygen. Integrated into self-contained breathing apparatuses ("SCBA"), the safety device calculates the user's remaining airtime, measures temperature, and computes the amount of time the user can remain safely in a fire environment or other hazardous situation. Notice of Removal ("Complaint") § IV ¶ 1. The device also contains an alarm that sounds if the wearer is motionless for a particular period of time. Id. Stumberg and Fulton formed Air Measurement Technologies, Inc., and North-South Corporation to develop, license, and market the safety device. In 1989, Stumberg engaged patent attorney Gary Hamilton[1] to secure patent protection for the safety device and related technology.

With Hamilton's knowledge, Stumberg and Fulton began marketing a prototype of their invention in 1989. Hamilton filed the first patent application on August 6, 1991, which issued as U.S. Patent No. 5,157,378 ("'378 patent") on October 20, 1992 and is entitled "Integrated Firefighter Safety Monitoring Alarm System." Hamilton also prosecuted continuation applications that issued as U.S. Patent Nos. 5,689,234 ("'234 patent"); 5,910,771 ("'771 patent"); 6,201,475; and 6,310,552. During the course of the

---

[1] Hamilton is licensed to practice law in the state of Texas and admitted to practice before the United States Patent and Trademark Office.

patent prosecution, Hamilton was associated with Akin Gump and now practices law with Hamilton & Terrile, L.L.P.

## A.    Prior Litigation

AMT filed six infringement suits in the Western District of Texas ("prior litigation") against SCBA manufacturers.[2]  Hamilton allegedly belatedly filed the first patent suit in 2000, and Stumberg retained new counsel in 2002 for the pending patent litigation.  All six suits settled between 2001 and 2003 for a total of approximately $10 million without a judicial determination of infringement, invalidity, or unenforceability of AMT's patents.

During the course of the prior litigation, AMT, with the help of new counsel, discovered various errors Hamilton allegedly made during patent prosecution and patent litigation.  The alleged errors are that Hamilton (1) failed to file the initial patent application within the one year 'on sale bar' of 35 U.S.C. § 102(b); (2) failed to disclose two prior patents and other facts during the prosecution of the patent applications; (3) failed to file in a timely fashion the application that resulted in the '771 patent, which contains the broadest claims to the invention; (4) miscalculated the settlement damages in the Draeger prior litigation; (5) failed to inform AMT of his mistakes despite his fiduciary duty to do so; (6) failed to inform AMT adequately of the existence of the prior litigant's defenses of on sale bar and inequitable conduct; and (7) made misrepresentations to AMT.  Compl. § IV ¶¶ 5-8, 11.

---

[2]    The six suits are Air Measurement Technologies, Inc. v. Draeger Safety, Inc., No. SA-00-CA-0427; Air Measurement Technologies, Inc. v. Mine Safety Appliances Co., No. SA-00-CA-1562; Air Measurement Technologies, Inc. v. Interspiro, No. SA-01-CA-0135; Air Measurement Technologies, Inc. v. Scott Techs., Inc., No. SA-01-CA-0774; Air Measurement Technologies, Inc. v. Bacou USA, Inc., No. SA-01-CA-0507; and Air Measurement Technologies, Inc. v. International Safety Instruments, No. SA-02-CA-0455.

**B.     Current Litigation**

AMT filed suit against Hamilton[3] and several law firms in a Texas state court on May 28, 2003, for legal malpractice, negligence, negligent misrepresentation, and breach of fiduciary duties–all state law claims.  AMT alleges that Akin Gump's errors forced them to settle the prior litigation far below the fair market value[4] of the patents[5] because the prior litigation defendants were, <u>inter alia</u>, able to raise as defenses invalidity (e.g., on sale bar) and unenforceability (due to inequitable conduct) that would not have existed without attorney error.

Akin Gump removed the case to the Western District of Texas on June 27, 2003, under 28 U.S.C. § 1338, arguing that the resolution of AMT's suit requires the resolution of a substantial question of patent law.  Akin Gump counterclaimed for a declaration of invalidity of the patents on various grounds and a declaration that the patents are not, by reason of attorney conduct, unenforceable based on inequitable conduct or invalid based on § 102(b).

AMT filed a motion to remand on July 18, 2003, which the district court denied on September 5, 2003, on the ground that AMT's suit "'necessarily depends on resolution of a substantial question of federal patent law,'" because, in order to prevail, AMT "must establish that their infringement claims were otherwise valid, but that Hamilton's negligence afforded the patent defendants certain defenses under patent law."  <u>Air Measurement Techs., Inc. v. Hamilton</u>, No. SA-03-CA-0541, 2003 U.S. Dist. LEXIS

---

[3]     Hamilton and Hamilton & Terrile, L.L.P. settled their dispute with AMT; therefore, they are not listed as appellants in the instant appeal.

[4]     Sales of SCBA products allegedly covered by the patents have been $100 million per year since 1998.  Compl. § IV ¶ 7.

[5]     The malpractice case only involves the '378, '234, and '771 patents.

16391, at *13 (W.D. Tex. Sept. 5, 2003) (quoting <u>Christianson v. Colt Indus. Operating</u> <u>Corp.</u>, 486 U.S. 800, 809 (1988)).

On June 23, 2006, i.e., a little over three years after the removal of the case, the parties changed postures. Branscomb, P.C.[6] moved to remand the case, asserting that § 1338 subject matter jurisdiction was lacking, and AMT opposed. The district court denied the motion to remand on the ground that it had jurisdiction under § 1338. In so holding, the district court determined that <u>Grable & Sons Metal Products, Inc. v. Darue</u> <u>Engineering & Manufacturing</u>, 545 U.S. 308 (2005), did not veto its jurisdiction and certified the following issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b):

> [w]hether a Texas state-law legal malpractice claim arising out of underlying patent prosecution and patent litigation necessarily raises a question of federal patent law, actually disputed and substantial, that a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

<u>Air Measurement Techs., Inc. v. Hamilton</u>, No. SA-03-CA-0541, slip op. at 9 (W.D. Tex. Sept. 29, 2006). On October 13, 2006, Akin Gump petitioned for permission to appeal under 28 U.S.C. § 1292(b). We exercised our discretion and granted the petition on November 2, 2006. <u>Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld,</u> <u>L.L.P.</u>, 206 F. App'x 980 (Fed. Cir. 2006) (non-precedential).

II

This appeal presents an issue of first impression in this court. The issue concerns whether, under the circumstances of this case, the district court properly exercised § 1338 jurisdiction over AMT's legal malpractice suit.[7] We review the district

---

[6] Akin Gump Straus Hauer & Feld, L.L.P. later joined the remand motion.
[7] Although AMT filed claims for legal malpractice, negligence, negligent misrepresentation, and breach of fiduciary duties, the focus of the district court's ruling,

court's jurisdictional determinations without deference. <u>Bd. of Regents v. Nippon Tel. & Tel. Corp.</u>, 414 F.3d 1358, 1362 (Fed. Cir. 2005). Where, as here, there is no diversity of citizenship, there must be federal question jurisdiction. <u>See generally</u> 28 U.S.C. §§ 1331, 1332, 1338 (providing district courts with subject matter jurisdiction over diversity and federal question cases). AMT asserts that jurisdiction is proper under § 1338, which provides district courts with exclusive federal jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.").

In <u>Christianson</u>, the United States Supreme Court set forth a two-part test for determining whether federal courts have exclusive jurisdiction over a case pursuant to 28 U.S.C. § 1338(a). 486 U.S. at 809. Section 1338 jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." <u>Id.</u> The parties to this appeal concede that the first part of the <u>Christianson</u> test is inapplicable because the malpractice cause of action asserted by AMT in their complaint is created by state law. Therefore, our analysis concerns whether patent law is a necessary element of AMT's malpractice claim.

---

and thus of this appeal, is on AMT's legal malpractice claim. Therefore, we do not address whether there is § 1338 jurisdiction over AMT's additional causes of action.

In making this determination, we are limited to an analysis of AMT's well-pleaded complaint. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, "arising under" jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Christianson, 486 U.S. at 809 (citations omitted). This rule applies "even if both parties admit that the defense is the only question truly at issue in the case." Id. (citations omitted). Thus, a claim does not arise under the patent laws if a patent issue appears only in a defense to that claim, Thompson v. Microsoft Corp., 471 F.3d 1288, 1292 (Fed. Cir. 2006), or appears in an answer as a counterclaim, Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 831 (2002).

AMT argues that their malpractice claim requires resolution of a substantial question of patent law. Based on our review of AMT's removal complaint,[8] without consideration of allegations that may be made in anticipation or avoidance of Akin Gump's defenses and without contemplation of Akin Gump's counterclaims, we agree. A review of the complaint reveals that approximately seven allegations of error in the context of patent prosecution or patent litigation, see supra § I.A., are the bases of

---

[8]    AMT has filed numerous amended complaints in district court. However, the complaint in question is the complaint at the time of removal. See Bd. of Regents, 414 F.3d at 1360 n.* (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)). But see Holmes, 535 U.S. at 829 n.1("[T]his case does not call upon us to decide whether the Federal Circuit's jurisdiction is fixed with reference to the complaint as initially filed or whether an actual or constructive amendment to the complaint raising a patent-law claim can provide the foundation for the Federal Circuit's jurisdiction."). We note that there are no substantial differences between the seven alleged errors in the removal complaint and the amended complaints.

AMT's legal malpractice claim.  See Compl. § V ¶ 1 ("Defendant's acts and omissions as pleaded above, jointly and severally, constitute legal malpractice and professional negligence, and negligent misrepresentations, each of which acts or omissions was the proximate cause of Plaintiffs' loss of recovery on their claims asserted in the Patent Litigation.").  AMT alleges that these errors forced them to settle prior litigation "for sums demonstrably and significantly less than their fair value."  Id. § IV ¶ 12.

Under Texas state law, the elements of a malpractice claim are (1) an attorney owed plaintiff a duty stemming from the attorney-client relationship, (2) the attorney breached that duty, (3) the breach proximately caused plaintiff's injuries, and (4) damages.  Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex. 1995) (internal citation omitted).  Because AMT's malpractice claim stems in part from unsuccessful prior litigation, AMT must establish that they would have prevailed in the prior litigation but for Akin Gump's negligence that compromised the litigation.  This is called the "case within a case" requirement of the proximate cause element of malpractice.  See Ballesteros v. Jones, 985 S.W.2d 485, 489 (Tex. App. 1998).

> In order to prevail on a legal malpractice claim which arises from prior litigation, the plaintiff has the burden to show that 'but for' the attorney's negligence, he or she would be entitled to judgment, and show what amount would have been collectible had he or she recovered the judgment.  This is commonly referred to as the 'suit within a suit' requirement.
> Because the plaintiff must establish that the underlying suit would have been won 'but for' the attorney's breach of duty, this 'suit within a suit' requirement is necessarily a component of the plaintiff's burden on cause in fact.

Id.  (internal citations omitted).  Because the underlying suit here is a patent infringement action against SCBA defendants, the district court will have to adjudicate, hypothetically, the merits of the infringement claim.  Because proof of patent

infringement is necessary to show AMT would have prevailed in the prior litigation, patent infringement is a "necessary element" of AMT's malpractice claim and therefore apparently presents a substantial question of patent law conferring § 1338 jurisdiction. See Christianson, 486 U.S. at 809.

Indeed, we would consider it illogical for the Western District of Texas to have jurisdiction under § 1338 to hear the underlying infringement suit and for us then to determine that the same court does not have jurisdiction under § 1338 to hear the same substantial patent question in the "case within a case" context of a state malpractice claim. See Grable, 545 U.S. at 312.

> The [arising under] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

Id. (citation omitted). There is simply no good reason to deny federal jurisdiction in this case.

Our decision today follows our precedent. Post-Christianson, we have held that patent infringement presents a substantial question of federal patent law conferring "arising under" jurisdiction. For example, in Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476, 477 (Fed. Cir. 1993), the plaintiff filed a business disparagement claim in Texas state court alleging that the defendant had warned plaintiff's customers that plaintiff's product infringed defendant's patent. The defendant removed the case to federal court under § 1338. Id. We held that the state law business disparagement claim arises under the patent laws because plaintiff would have to prove the falsity of the statement that its products infringe defendant's patent by

proving non-infringement. Id. at 478 ("Thus, [plaintiff's] right to relief necessarily depends upon resolution of a substantial question of patent law, in that proof relating to patent infringement is a necessary element of [plaintiff's] business disparagement claim."); accord Scherbatskoy v. Halliburton Co., 125 F.3d 288, 291 (5th Cir. 1997) (finding § 1338 jurisdiction and transferring case to this court where proof of breach of contract claim requires proof of infringement). We see no logical basis for treating a state law business disparagement tort requiring proof of patent non-infringement any differently from the present state law malpractice tort requiring proof of patent infringement.

III

In addition to proving patent infringement in the "case within a case" context, AMT will have to show that it would have prevailed against the defenses the prior litigants raised. These are not the sort of jurisdiction-defeating defenses contemplated by Christianson, 486 U.S. at 809, for they are part of the malpractice causation element rather than the defenses raised by Akin Gump in the current litigation. The defenses of the SCBA litigants fall into two categories: those that stem from the alleged attorney errors (i.e., malpractice-related defenses, such as the defenses of inequitable conduct and on sale bar) and those that are independent of these errors (i.e., non-malpractice-related defenses).[9]

There is a dispute regarding which of these defenses, if any, AMT will have to prove had merit (e.g., malpractice-related defenses) or defeat as defenses lacking merit (e.g., non-malpractice-related defenses). For example, Akin Gump asserts that AMT's

---

[9] The Draeger defendants, however, did not raise malpractice-related defenses.

position is that it does not have to prove that the malpractice-related defenses were valid defenses but only has to show that these defenses were available or plausible in view of the alleged errors. Therefore, per Akin Gump, the district court does not have to resolve a substantial question of patent law. AMT disagrees.

To the extent that AMT has to prove or overcome invalidity, invalidity may be a substantial question of patent law. See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1329 (Fed. Cir. 1998) (holding that a state law claim of injurious falsehood presented a substantial question of patent law where plaintiff had to show the invalidity of the patent), overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (en banc in relevant part). Regardless of the defenses AMT would have to address, if any, AMT would certainly have to prove patent infringement; that alone confers § 1338 jurisdiction. Because we consider the patent infringement issue alone to be a sufficient jurisdictional basis for the case, we do not reach whether, under Texas law, AMT would have to prove certain defenses were valid or merely available.

IV

Akin Gump contends that the "impaired settlement value" theory (i.e., the allegation that attorney error compromised the value of AMT's patents) is a novel theory of malpractice that does not require the resolution of a substantial question of patent law.[10] If there is a theory upon which AMT can prevail on their malpractice claim that does not involve a substantial patent law question, then patent law is not essential to

---

[10] Notably, Akin Gump does not argue that any of the approximately seven alleged attorney errors constitutes alternative theories of malpractice liability. Therefore, we focus solely on Akin Gump's impaired settlement value theory argument.

the malpractice claim, and § 1338 jurisdiction is lacking.  See Christianson, 486 U.S. at 810 ("[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories.").

The impaired settlement value theory calculates the difference between the actual settlement amount and the predicted settlement amount absent malpractice.  We view the impaired settlement value theory as a theory of damages, not a theory of liability for malpractice.[11]  In addition to computation of damages, AMT must still prove it would have been successful in the underlying litigation but for the alleged errors, which will require proof of patent infringement.  Thus, the impaired settlement value theory does not obviate the "case within a case" element of AMT's claim.

V

Akin Gump argues that Grable and Empire HealthChoice Assurance, Inc. v. McVeigh, 126 S. Ct. 2121 (2006), Supreme Court cases that address § 1331 jurisdiction over state law claims, preclude the district court's jurisdiction over AMT's suit.  That these cases do not address § 1338 jurisdiction is of no moment because in Christianson, the Supreme Court grafted § 1331 precedent onto its § 1338 analysis and held that the phrase "arising under" has the same meaning in § 1338 as it does in § 1331, the general federal-question provision.  Christianson, 486 U.S. at 808-09.

Akin Gump further asserts that Grable adds a new dimension to the Christianson test based on the congressionally-approved balance between federal and state jurisdiction.  However, the concern about federalism in Grable is not new, nor does Grable change § 1338 caselaw.  See Id. at 809 n.2 ("'Determinations about federal

---

[11]    Although we consider the issue to be one of damages, we do not address whether such a theory is viable under Texas state law, as that issue is not before us.

jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system'" (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 810 (1986))). Nonetheless, we reject Akin Gump's argument that Grable and Empire preclude the district court's § 1338 jurisdiction in this case.

Grable involved a state law action to quiet title between a taxpayer-former owner of a property and a purchaser at a tax sale. 545 U.S. at 310. After providing notice by certified mail, the Internal Revenue Service seized Grable's property to satisfy its tax delinquency and sold it to Darue. Id. at 310-11. Five years later, Grable brought a state law quiet title action against Darue in state court, alleging Darue's title was defective because the IRS had not complied with the notice requirements of 26 U.S.C. § 6335. Id. at 311. Darue removed the case to federal district court because the state law claim depended on an interpretation of § 6335. Id.

Retreating from the view that a state law claim conveys federal question jurisdiction if it appears from the complaint that the right to relief requires construction or application of federal law, see Smith v. Kan. City Title & Trust Co., 255 U.S. 180, 199 (1921), the Supreme Court restricted "arising under" jurisdiction to those cases where there is a contested, substantial federal issue, "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable, 545 U.S. at 312-13. In addition, the contested, substantial federal issue will qualify for federal jurisdiction "only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313-14 (emphasis added). Thus, the Grable test for "arising under" jurisdiction involves determining whether "a state-law claim necessarily raise[s] a stated

federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

Applying this test, the Supreme Court held that the construction of the notice statute in the context of the quiet title action belonged in federal court. Id. In so holding, the Court observed that the notice requirement was an essential element of the state claim, the meaning of the notice statute was the only legal or factual issue disputed in the case, the Government had a strong interest in the collection of delinquent taxes and "in the availability of a federal forum to vindicate its own administrative action," buyers and tax delinquents may consider it valuable to have the experience of federal judges used to handling tax matters, and there would only be a "microscopic effect on the federal-state division of labor." Id. at 315.

Grable did not hold that only state law claims that involve constructions of federal statute or pure questions of law belonged in federal court. Instead, the holding was based on the substantiality and federalism factors, such as the Government as a party, the experience of federal judges in handling tax matters, and the microscopic effect of the case, which tipped the federalism balance in favor of federal question jurisdiction. Here, the patent infringement aspect of the malpractice claim counsels in favor of federal jurisdiction.

For example, patent infringement is disputed, for there is no concession by Akin Gump that the prior SCBA litigants infringed AMT's patents, and the issue is substantial, for it is a necessary element of the malpractice case. Patent infringement also survives the federalism analysis of Grable. There is a strong federal interest in the adjudication

of patent infringement claims in federal court because patents are issued by a federal agency. The litigants will also benefit from federal judges who have experience in claim construction and infringement matters. See Grable, 545 U.S. at 315; see also Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc., 322 F.3d 1335, 1341 (Fed. Cir. 2003) (stating that patent infringement involves a two-step process where the court first determines the scope and meaning of the asserted claims and then compares the construed claims to the accused product). Under these circumstances, patent infringement justifies "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable, 545 U.S. at 312. In § 1338, Congress considered the federal-state division of labor and struck a balance in favor of this court's entertaining patent infringement. For us to conclude otherwise would undermine Congress's expectations.

Similarly, Empire, which addresses the proper forum for state law reimbursement claims, does not undermine our decision in this case. In Empire, after a plan beneficiary's estate settled a state court tort action, an insurance carrier filed a claim in federal court under § 1331 seeking reimbursement of the amount it had paid for the beneficiary's medical care from the recovery of proceeds in the state court litigation. 126 S. Ct. at 2127. The insurance carrier argued that § 1331 jurisdiction was proper because the claim sought "to vindicate a contractual right contemplated by federal statute" and because "federal law is a necessary element of [its] claim." Id. at 2131.

However, the federal law providing for the health insurance plan did not address reimbursement rights of insurance carriers. Id. at 2127-28. Instead, reimbursement rights were covered by contracts. Id. Rejecting Empire's arguments and applying

<u>Grable</u>, the Supreme Court held that because the claim involved no right created by federal statute and the practical issue is the share of the settlement that belonged to Empire, federal question jurisdiction did not exist. <u>Id.</u> at 2135-37. "[I]t is hardly apparent why a proper 'federal-state balance' would place such a nonstatutory issue under the complete governance of federal law, to be declared in a federal forum." <u>Id.</u> at 2137. Therefore, <u>Empire</u>, unlike the present malpractice case, failed the substantiality and federalism aspects of the <u>Grable</u> test. <u>See</u> <u>Grable</u>, 545 U.S. at 313 (observing that a substantial question indicates a "serious federal interest in claiming the advantages thought to be inherent in a federal forum").

VI

For all the foregoing reasons, we hold that at least where, as here, establishing patent infringement is a necessary element of a malpractice claim stemming from alleged mishandling of patent prosecution and earlier patent litigation, the issue is substantial and contested, and federal resolution of the issue was intended by Congress, there is "arising under" jurisdiction under § 1338. Accordingly, the decision of the district court is

<u>AFFIRMED</u>.