# United States Court of Appeals for the Federal Circuit

---

**LANDMARK SCREENS, LLC,**
*Plaintiff-Appellant,*

v.

**MORGAN, LEWIS, & BOCKIUS, LLP,**
AND **THOMAS D. KOHLER,**
*Defendants-Appellees.*

---

2011-1297

---

Appeal from the United States District Court for the Northern District of California in case no. 08-CV-2581, Judge Jeremy Fogel.

---

Decided: April 23, 2012

---

SANFORD JAY ROSEN, Rosen, Bien & Galvan, LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief was CLARK S. STONE, Haynes and Boone, LLP, of San Jose, California.

ELLIOT R. PETERS, Keker & Van Nest, of San Francisco, California, argued for defendants-appellees. With him on the brief were DANIEL E. JACKSON and STEVEN P. RAGLAND.

---

Before BRYSON, CLEVENGER, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CLEVENGER.
Concurring opinion filed by *Circuit Judge* O'MALLEY.

CLEVENGER, *Circuit Judge.*

Landmark Screens, LLC ("Landmark") appeals from the final decision of the United States District Court for the Northern District of California dismissing its state law fraud claim against Morgan, Lewis & Bockius ("MLB") and Thomas D. Kohler ("Kohler"). *Landmark Screens, LLC v. Morgan Lewis & Bockius, LLP*, No. 5:08-cv-2581, 2011 WL 482771 (N.D. Cal. Feb. 7, 2011) (hereafter "*Dismissal Order*"). Granting summary judgment to the defendants, the district court dismissed Landmark's complaint on the grounds that it was filed out of time under the relevant California statute of limitations and that Landmark's timeliness error was not correctible in equity. In addition, the court issued a partial summary judgment order, the effect of which would have been to limit damages available to Landmark had its complaint been both timely and successful. *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP*, No. 5:08-cv-2581, 2010 WL 3629816 (N.D. Cal. Sept. 14, 2010) (hereafter "*Damages Order*"). For the reasons set forth below, we reverse the judgment dismissing the complaint because under California equitable tolling law, the state law fraud claim was timely filed in the United States district court. Further, because the record does not support the district court's manner of summarily limiting damages, we vacate the *Damages Order* and remand the case for trial on the fraud claim.

I

This case concerns Landmark's invention of a light-emitting diode ("LED") electronic billboard. According to Landmark, the billboard's large size, high-quality images, and brilliance make it particularly effective for display advertising, and the ability to provide content in digital format reduces costs and time-to-market for advertisers. To protect its ability to develop and market its invention, Landmark retained Kohler to prepare and file a patent application. At the time, Kohler was a partner at Pennie & Edmonds LLP ("Pennie").

On January 9, 2002, Kohler filed U.S. Patent Application No. 10/045,096 ("the '096 application") on Landmark's behalf. The '096 application included 72 claims covering different aspects of Landmark's LED invention. In May 2003, the United States Patent and Trademark Office ("PTO") informed Kohler that, in its view, Landmark's application contained multiple inventions. The PTO then asked Landmark to restrict the '096 application to one of the following four inventions: (1) claims 26-31 and 56-72, "drawn to an led [sic] having a threshold operator," (2) claims 32-39, "drawn to calibrating a display and mapping the digital image," (3) claims 40-55, "drawn to detecting absence of a second image and inputting a default image," and (4) claims 1-25, "drawn to selecting a color gamut." On May 5, 2003, Kohler elected to pursue claims 26-31 and 56-72 and withdrew the remaining claims. It appears undisputed that both Kohler and Landmark intended that the withdrawn claims would be timely pursued via one or more divisional applications, which would presumably benefit from the '096 application's filing date. However, that is not how the story unfolded.

Shortly after this, on July 10, 2003, the PTO published the '096 application. As discussed below, this

publication would later create serious problems for Kohler and Landmark due to the printed publication rule of 35 U.S.C. § 102(b).

On August 13, 2003, Kohler submitted a divisional application to the PTO, and it was assigned Application No. 10/640,916 ("the '916 divisional application"). However, in filing the '916 divisional application, Kohler made two mistakes that left the application incomplete: (1) he failed to include copies of required drawings and specifications, and (2) his transmittal letter failed to incorporate by reference materials filed earlier with the original '096 application. Kohler also did not use the PTO's "postcard receipt" method, which would have enabled prompt notification when the PTO noticed deficiencies in the application.

It was not until June 22, 2004, that the PTO issued a Notice of Incomplete Nonprovisional Application, stating that the '916 divisional application was missing the required specification and therefore had not yet been granted a filing date. By this time, Kohler had left Pennie and was practicing law at MLB, with Landmark as a client of the firm. Neither Kohler nor any other MLB attorney took action for several weeks, and the one-year anniversary of the '096 application's publication passed on July 10, 2004. As a result, Landmark's own '096 application became prior art against the '916 divisional application under 35 U.S.C. § 102(b). Unless the PTO could be convinced to give the '916 divisional application the benefit of an earlier filing date, all claims in the '916 divisional application would be lost.

In mid-July 2004, Kohler discussed the matter with his partners at MLB and the attorneys representing Pennie, but none of these attorneys apprised Landmark of the situation. On August 23, 2004, Kohler filed the

papers necessary to complete the '916 divisional application, along with a petition to grant it the original filing date of August 13, 2003. The PTO dismissed the petition for "failure to exercise due care, or lack of knowledge of, or failure to properly apply, the patent statutes or rules of practice" and granted the '916 divisional application a filing date of August 23, 2004, i.e., the date on which Kohler finally corrected the application.

For the reasons discussed above, this was a devastating outcome for Landmark. Nevertheless, neither Kohler nor MLB divulged the true nature or seriousness of the problem for another six months. Landmark states that the first time it could have had any inkling that there were problems with its '916 divisional application was in late December 2004, when a Landmark official telephoned Kohler to get a status report. Kohler told the Landmark official, without explanation, that the claims in the '916 divisional application were "lost" but assured Landmark that the firm was working to salvage the claims. Even then, Landmark states that Kohler and MLB actively misled it by falsely telling Landmark that there was a possibility of fixing the problem. Finally, in November 2005, Landmark fired Kohler and MLB.

On November 30, 2005, Landmark filed suit against Kohler, Pennie, and MLB in the Superior Court for Santa Clara, California, alleging legal malpractice, negligence, and breach of fiduciary duty. In March 2008, Landmark reached a settlement with Pennie and a partial settlement with Kohler, concerning his actions while he was a Pennie lawyer, and the California state court dismissed Landmark's claims against them. On April 28, 2008, MLB and Kohler filed a demurrer and asked the court to dismiss the suit against them.

On May 21, 2008, the California state court dismissed Landmark's claims against MLB and Kohler as a MLB lawyer for lack of subject matter jurisdiction. Citing *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007), and *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007), the court reasoned that the federal courts had exclusive jurisdiction over this case as its resolution depended on a substantial question of patent law.

The same day that the California state court dismissed the action, Landmark filed a complaint in the United States District Court for the Northern District of California, making the same claims as in the state court action and adding a cause of action for breach of contract arising out of the same facts. On June 11, 2008, Landmark filed an amended complaint that included all previous claims and added a claim for actual fraud. Over the next two years the district court dismissed all of Landmark's claims except its fraud claim as barred by California's one-year statute of limitations governing any action for legal malpractice. Landmark does not appeal these rulings.

As to the fraud claim, the parties continued to litigate. Under California law, the elements of fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004). Landmark asserted that the following conduct by Kohler and MLB constituted fraud: concealment of the June 22, 2004, notice from the PTO rejecting the '916 divisional application, malpractice committed in filing the '916 divisional application, and defendants' improper course of

action in seeking correction of its malpractice. *Dismissal Order* at 4. Landmark alleged that such fraud damaged it because, absent the fraud, competent counsel could have prosecuted a divisional application in time to avoid the adverse prior art effect of 35 U.S.C. § 102(b). On September 14, 2010, the district court entered partial summary judgment as to damages on the fraud claim, limiting the possible recovery that Landmark might obtain at trial were it to succeed on the merits of its fraud claim. *Damages Order* at 10. We will return to the *Damages Order* in Part V below.

On February 7, 2011, the district court granted summary judgment to the defendants. *Dismissal Order* at 9. The court ruled that Landmark had notice of its fraud claim more than three years before filing its federal lawsuit, and that the claim was therefore barred by the statute of limitations. Cal. Civ. Proc. Code § 338(d) (West 2011). Landmark timely appealed both summary judgment orders. Because the *Dismissal Order* encompasses the *Damages Order*, we turn to the *Dismissal Order* first.

II

We must first determine if we have jurisdiction over this appeal. Pursuant to 28 U.S.C. § 1295(a)(1), we have exclusive jurisdiction over an appeal from a final district court decision if the court's jurisdiction was based at least in part on 28 U.S.C. § 1338(a), which states that federal district courts have exclusive jurisdiction over actions "arising under any Act of Congress relating to patents." Here, it appears that the district court based its jurisdiction on 28 U.S.C. § 1338(a).

In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809 (1988), the Supreme Court stated that section 1338(a) jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal

patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." The first part of the *Christianson* test is not implicated because Landmark's causes of action are created by state law. As such, we must determine whether there is a substantial question of patent law presented due to Landmark's claims.

In making this determination, we are limited to an analysis of Landmark's well-pleaded complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). In its initial complaint filed in the district court, Landmark alleged claims of legal malpractice, negligence, breach of fiduciary duty, and breach of contract. Under California law, the elements of a legal malpractice claim are: "(1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a proximate causal connection between the negligent conduct and the resulting injury; and (3) actual loss or damage resulting from the negligence." *Thompson v. Halvonik*, 43 Cal. Rptr. 2d 142, 145 (Cal. Ct. App. 1995) (citing *Budd v. Nixen*, 491 P.2d 433, 436 (Cal. 1971)). To prove a proximate causal connection, the plaintiff must show that "the harm or loss would not have occurred without the attorney's malpractice." *Viner v. Sweet*, 70 P.3d 1046, 1048 (Cal. 2003). This requires the "case within a case" or "trial within a trial" determination. *See Blanks v. Shaw*, 89 Cal. Rptr. 3d 710, 725 (Cal. Ct. App. 2009). Because the underlying question here is whether Landmark would have been able to achieve patent protection for its invention absent the alleged malpractice, there is a substantial question of patent law presented that conferred jurisdiction to the

district court under 28 U.S.C. § 1338(a) at the time of filing of the original complaint.

The exercise of jurisdiction here is consistent with this court's decision in *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1362 (Fed. Cir. 2010), in which we held that the district court had jurisdiction under 28 U.S.C. § 1338(a) in a legal malpractice case relating to the preparation and filing of a U.S. patent. In that case, the plaintiff had retained patent counsel for the purpose of preparing and filing a patent application covering her invention. In haste to avoid missing a filing deadline, patent counsel submitted patent applications that the plaintiff asserted "were deficient in various respects and that these deficiencies ultimately precluded her from securing patents on her inventions." *Id.* at 1358. Under the prevailing state law, the plaintiff's malpractice claim required her to prove that but for the alleged negligence of her patent counsel, she would have obtained patents on her invention. Because the "patentability of Ms. Davis's inventions is controlled by U.S. patent law[,] . . . patent law is a necessary element of the legal malpractice claims presented in Ms. Davis's complaint," and the district court properly exercised jurisdiction under 28 U.S.C. §1338(a). *Id.* at 1362. Under our precedent, the district court properly exercised jurisdiction over Landmark's initial complaint.

The same analysis pertains to Landmark's fraud claim. In order for Landmark to prevail on its claim for damages arising from the alleged fraud, under California law Landmark would have had to prevail on its "case within a case" and prove that but for the alleged fraud it would have obtained patent rights for its invention. As in *Davis*, the patentability of Landmark's invention invokes patent law sufficiently to sustain district court jurisdiction under 28 U.S.C. §1338(a). Furthermore, at a mini-

mum, the district court had supplemental jurisdiction over the fraud claim pursuant to 28 U.S.C. § 1367(a).

### III

This court "reviews the district court's grant or denial of summary judgment under the law of the regional circuit." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys.*, 583 F.3d 832, 839 (Fed. Cir. 2009), *aff'd*, 131 S. Ct. 2188 (2011) (internal quotation marks omitted) (hereafter "*Roche*"). The Ninth Circuit, the relevant regional circuit here, "review[s] the district court's grant of summary judgment de novo, determining whether, viewing all evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043-44 (9th Cir. 2009) (italics and internal quotation marks omitted).

Additionally, this court "'defers to the law of the regional circuits on matters of procedural law that do not implicate issues of patent law,'" such as statute of limitations rulings. *Roche*, 583 F.3d at 840 (quoting *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir. 2003)). In the Ninth Circuit, a district court's decision whether to apply equitable estoppel is reviewed for abuse of discretion, *Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir. 1998), as generally is the decision whether to apply equitable tolling. *See Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003). However, where the underlying facts on a claim for equitable tolling are undisputed, the district court's decision whether to toll the statute of limitations is reviewed *de novo*. *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176 (9th Cir. 2001)

(en banc). Because the essential facts of Landmark's equitable tolling claim are undisputed, we apply the *de novo* standard of review, as we do in review of the *Damages Order* in Part V below.

IV

Landmark's fraud claim is governed by the three-year statute of limitations period set forth in California Code of Civil Procedure § 338(d), which states that a fraud claim "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Since Landmark filed the instant action on May 21, 2008, the district court considered whether Landmark had actual or inquiry notice of the facts giving rise to its fraud claim prior to May 21, 2005. *Dismissal Order* at 8. The district court found that Landmark had actual or inquiry notice of its fraud claim in late March 2005, when Kohler sent Landmark a letter stating that there had been an error with the '916 divisional application and that all of the claims were potentially lost. *Id.*

Landmark sought relief from the statute of limitations by way of two equitable doctrines: equitable estoppel and equitable tolling. Landmark's estoppel theory focused on the conduct of Kohler and MLB after the mistakes in prosecution of the '916 divisional application came to light, when Landmark's counsel gave assurances that its mistakes could be cured. According to Landmark, those assurances led it to rely on counsel to the detriment of timely pursuit of legal remedies against counsel. Thus, Landmark argued that the defendants should be equitably estopped from invoking the statute of limitations. The district court rejected Landmark's estoppel theory but did not address Landmark's equitable tolling argument, which was based on the California equitable tolling law discussed in the following paragraph.

California law "favors avoiding forfeitures and allowing good faith litigants their day in court." *Addison v. State*, 578 P.2d 941, 941 (Cal. 1978). California and Ninth Circuit courts will "toll[] the limitation period of a second action during the pendency of a first action later found to be defective." *Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 684 (Cal. Ct. App. 1983); *see Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1175 (9th Cir. 1986) (tolling the statute where the plaintiff's first action was dismissed for lack of subject matter jurisdiction, causing her second suit to be untimely filed). Under California law, courts consider three factors in determining whether equitable tolling should apply when a litigant timely files a second suit in another forum based on the same facts: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137-38 (9th Cir. 2001) (en banc)).

In *Daviton*, the Ninth Circuit provided an extensive review of California's equitable tolling law. It concluded that the principal goal of statutes of limitations is to prevent the assertion of stale claims, and equitable tolling is a general policy to preserve claims when a party "possessing several legal remedies . . . reasonably and in good faith pursues one designed to lessen the extent of his injuries or damage." 241 F.3d at 1137 (quoting *Addison*, 578 P.2d at 943). Elaborating on the three-part California test, the Ninth Circuit noted that the notice element is satisfied when the first claim is timely filed and the facts alleged in the first claim "alert the defendant in the second claim of the need to begin investigating the facts which form the second claim." *Id.* at 1138 (quoting *Col-*

*lier*, 191 Cal. Rptr. at 924). The second element is satisfied "[s]o long as the two claims are based on essentially the same set of facts." *Id.* (quoting *Collier*, 191 Cal. Rptr. at 925-26). When such is the case, "timely investigation of the first claim should put the defendant in position to appropriately defend the second. Once he is in that position the defendant is *adequately protected* from stale claims and deteriorated evidence." *Id.* As for the third element, the Ninth Circuit noted that California case law had not defined this element with the precision of the first two because the third element can turn on subjective factors peculiar to any given case. *Id.*

California law also recognizes limits on its otherwise somewhat generous inclination to permit equitable tolling to excuse failure to meet a statute of limitations: "[t]hough equity will toll the statute of limitations while a plaintiff, who possesses different legal remedies for the same harm, reasonably and in good faith pursues one, it will not toll the statute while a plaintiff who has allegedly suffered several different wrongs, pursues only one remedy as to one of those wrongs." *Aerojet Gen. Corp. v. Superior Court*, 177 Cal. App. 3d 950, 956 (Cal. Ct. App. 1986) (citing *Loehr v. Ventura Cnty. Cmty. Coll. Dist.*, 147 Cal. App. 3d 1071, 1086 (Cal. Ct. App. 1983)). *Aerojet* thus presents a positive test for invocation of equitable tolling and a negative test for barring equitable tolling. With this understanding of California law, we conclude that the district court erred in not tolling the three-year statute of limitations for fraud claims during the time the case was pending in the state courts. This conclusion means that Landmark's fraud claim was timely filed in the district court.

Our conclusion is mandated by the factors laid out in *Daviton*. As to the first *Daviton* factor, Landmark gave timely notice to MLB and Kohler by filing the state court

lawsuit in November 2005, less than a year after Kohler first mentioned any problem with the '916 divisional application in late December 2004 and well within the statutes of limitation for malpractice (one year) and fraud (three years). The facts alleged in the state court complaint included the allegations of deception by the defendants about the nature of the defendants' conduct and adequately provided notice to MLB and Kohler of the claims brought in the federal action. As to the second *Daviton* factor, the appellees have suffered no prejudice in their ability to gather evidence and prepare a defense since they were on notice of all key facts underlying Landmark's claims from the start of the state court action. As to the third *Daviton* factor, Landmark acted reasonably and in good faith in filing the federal lawsuit after the state court dismissed its claims for lack of subject matter jurisdiction. At the time that Landmark filed the state court suit, there was ambiguity as to whether the suit belonged in state or federal court, as this court had not yet decided *Immunocept*, 504 F.3d 1281, and *Air Measurement Technologies*, 504 F.3d 1262. The Ninth Circuit has expressly stated that when the law is unclear whether state or federal court is the proper forum for suit, a plaintiff "should not be denied a chance to present his case because he chose the wrong line of precedent." *Valenzuela*, 801 F.2d at 1175.

In their brief to this court, the defendants do not challenge that Landmark satisfies the three-part test stated in *Daviton*. Instead, they argue that *Aerojet* defeats Landmark's claim to equitable tolling. We reject the contention of Kohler and MLB that the negative rule in *Aerojet* bars equitable tolling of Landmark's fraud claim. Kohler and MLB view the wrong of malpractice as fundamentally different from the wrong of fraud. Thus, they see Landmark's pursuit of a remedy for the alleged mal-

practice as a bar under *Aerojet* to a later claim for remedy from the harm caused by the alleged fraud. Kohler and MLB misunderstand the gist of Landmark's grievance. From the start, Landmark has asserted a single harm to it, the loss of its patent rights. The defendants have even admitted as much. In their motion to dismiss the fraud claim, they stated that "Landmark complains of a single harm arising from a single course of conduct—loss of patent rights." J.A. 1164. For that single harm, Landmark has multiple legal remedies. As discussed above, Landmark reasonably and in good faith pursued a remedy in the state courts, only to learn that the state courts lacked jurisdiction over its legal remedy. Landmark thus qualifies for equitable tolling under California law, and the negative test of *Aerojet* does not stand in Landmark's way.

Since we hold that the district court should have equitably tolled the statute of limitations on Landmark's fraud claim during the time the case was pending in the state courts, we need not decide whether the district court abused its discretion in denying Landmark's request for the application of equitable estoppel.

V

We now turn to Landmark's appeal from the *Damages Order*. Some background information concerning the *Damages Order*, which was not germane to decision of the equitable tolling claim, should be stated.

Although Kohler and MLB did not prosecute the '916 divisional application in a timey manner, they did prosecute the '096 application, which was limited to elected claims 26-31 and 56-72. On October 28, 2003, Landmark was awarded U.S. Patent No. 6,639,574 (the "'574 patent") on the elected claims. Landmark not surprisingly turned to new patent counsel in October 2005 for an assessment

of what could be done to rectify the harm done to the non-elected claims that had been included in the ill-fated '916 divisional application. New patent counsel determined that Landmark could seek reissue of the '574 patent under 35 U.S.C. § 251, to broaden the issued claims on the ground that due to error without deceptive intent, the patentee in the elected claims of the '096 application had claimed less than his right to claim. On November 10, 2009, Landmark was granted reissue patent number RE40,953 ("the RE'953 patent"), which includes the 23 elected claims that issued as the '574 patent and new claims 24-66.

Our precedent provides that the reissue statute may not be used to grant patent protection for substantially identical claims that were not properly prosecuted in divisional applications. *See In re Orita*, 550 F.2d 1277, 1280-81 (CCPA 1977). Our precedent also recognizes that the reissue statute is properly invoked when the new claims in the reissue application are not substantially identical to previously non-elected claims. *See In re Doyle*, 293 F.3d 1355 (Fed. Cir. 2002). When the reissue claims are broader than the issued claims, the patentee may assert that the issued claims are, in the language of section 251, "wholly or partly inoperative or invalid . . . by reason of the patentee claiming . . . less than he had a right to claim in the patent." *Id.* at 1360.

The district court ruled in the *Damages Order* that Landmark's reissue application did not present substantially identical claims to claims of the failed '916 divisional application and consequently satisfied the requirements of section 251. Neither party assigns error to the district court in this regard. Instead, Landmark vigorously disputes the district court's conclusion that independent reissue claims 43 and 58 (and the reissue claims that depend from them) are broader than, and thus

include, corresponding claims in the '916 divisional application. The district court reasoned that since the scope of the claims "lost" in the '916 divisional application is recovered by the broader scope of the corresponding reissue claim, Landmark's right to any damages related to those reissue claims must be cut off as of the date of the reissue patent. In order to affirm the *Damages Order*, we must be convinced that the district court was correct in concluding that the specified reissue claims are broader than their divisional counterparts.

The district court compared the claim language of reissue claims 43 and 58 and their counterparts, claims 1 and 42 of the '916 divisional application. Because each of claims 1 and 42 contained limitations not present in claims 43 and 58, the district court concluded that the broader reissue claim necessarily captured the entirety of the corresponding divisional claims. However, in its general analysis of the scope of the corresponding claims, the district court overlooked the fact that reissue claims 43 and 58 are in some respects actually narrower than their corresponding divisional claims.

For example, while claim 1 of the '916 divisional application imposes no express selection criteria to be used in the "selecting a color gamut" step and instead merely defines the desired result, claim 43 of the RE'953 patent expressly imposes two selection criteria, *i.e.*, the selecting must be carried out "according to the specified color and an operating characteristic." Similarly, the "selecting" step in claim 42 of the '916 divisional application selects "the color gamut containing said specified color," but the "selecting" step in claim 58 of the RE'953 patent selects "the color gamut for each pixel." The district court failed to appreciate that while the pertinent reissue claims may be broader in some respects than their corresponding divisional claims, the reissue claims at the same time are

in other respects narrower.  Because the district court did not reconcile these opposing scopes, its conclusion that the reissue claims necessarily encompass the divisional claims is incorrect.  The respective claims recite different manners of carrying out their respective "selecting" steps. The district court erred by simply concluding that the '916 divisional application's claims contain limitations not present in the RE'953 patent's claims and by failing to analyze these differences in language that may affect the scope of these claims.

Because the underpinning of the district court's *Damages Order* is flawed, it was error to hold that Landmark could suffer no harm after the issuance of the RE'953 patent regarding reissue claims 43 and 58 and their corresponding dependent claims.  We therefore vacate the *Damages Order*.

## VI

For the reasons stated above, the judgment of the district court that Landmark's fraud claim is time-barred is reversed, and its judgment restricting Landmark's legally-cognizable harm since issuance of the RE'953 patent is vacated.  The case is remanded for further proceedings consistent with this opinion.

**REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

---

**LANDMARK SCREENS, LLC,**
*Plaintiff-Appellant,*

**v.**

**MORGAN, LEWIS, & BOCKIUS, LLP,**
AND **THOMAS D. KOHLER,**
*Defendants-Appellees.*

---

2011-1297

---

Appeal from the United States District Court for the Northern District of California in case no. 08-CV-2581, Judge Jeremy Fogel.

---

O'MALLEY, *Circuit Judge*, concurring.

I concur in full in parts I, III, and IV of the majority opinion. I also concur in the result in part V, but not in the entirety of its reasoning. Finally, while I must concur in the result in part II, I write separately because I believe the case law upon which part II is premised should be reconsidered by the Court *en banc*.

### I.

I will not repeat or further comment on the careful analysis in parts I, III, and IV of the majority opinion. I simply note my agreement with them.

## II.

I agree with the conclusion in part V that the *Damages Order* must be vacated. I also agree that one of the reasons that order must be vacated is that the trial court erred in concluding that the reissue claims necessarily encompass the full scope of the claims in the '916 divisional application. There are, however, additional reasons why the *Damages Order* must be vacated.

First, to the extent the *Damages Order* capped the damages Landmark could seek at trial, the *in limine* ruling was wrong even if the trial court's analysis of the scope of the reissue claims was correct. Given the less-than-linear process that ultimately led to issuance of the '953 reissue patent and governing law that prohibits applicants from using the reissue statute to recapture claims previously lost in improperly prosecuted divisional applications, the claims in the '953 reissue patent remain subject to a validity challenge if and when Landmark attempts to enforce them in an infringement action. To the extent that threat diminishes the value of the '953 reissue patent to Landmark and Landmark can proffer credible, persuasive and admissible evidence to that effect, reasonable jurors could predicate a damages award in favor of Landmark on such evidence.

The *Damages Order* also must be vacated for a more fundamental reason. The trial judge assumed that the motion *in limine* which gave rise to the *Damages Order* was a motion which presented a pure question of law, put to him to answer rather than to the trier of fact. That assumption was understandable since, in a patent infringement action, claim scope *is* an issue for the trial judge alone. *See, e.g., Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). This is not an infringement action, however.

This is a fraud action, governed by state law, not patent law or patent practice.  It is an action, moreover, where any ruling on the scope of the claims in the '953 or the '916 divisional application will have no bearing or substantive effect on the *actual* scope of those claims.  The question of claim scope impacts only the questions of causation and the type of recoverable damages Landmark can claim.  As such, they are questions for the trier of fact, not the trial judge.

While a trial judge always may conclude that no reasonable trier of fact could reach a different conclusion than he on questions presented in a motion *in limine*, that is not what the trial judge did here.  Not once did he address what a reasonable juror might or might not conclude on the facts presented.  Instead, apparently with the parties' blessings, he treated the issue as he would be required to do in a patent infringement trial.  That was error—understandable error—but error nonetheless.

## III.

I now turn to part II of the opinion, where the jurisdictional predicate for our judgment is discussed.  While I agree that our current case law compels this panel to exercise jurisdiction over this appeal, I believe our Court should reconsider that case law *en banc*.  I hold this view for the reasons detailed in my dissent from the denial of rehearing *en banc* in *Byrne v. Wood, Herron & Evans, LLP*, --- F.3d ---, 2012 U.S. App. LEXIS 6021 (Fed. Cir. Mar. 22, 2012) (O'Malley, J., dissenting from denial of petition for rehearing en banc) and in my concurrence in *USPPS, Ltd. v. Avery Dennison Corp.*, 2011-1525, ---F.3d---, (Fed. Cir. 2011) (O'Malley, J., concurring).  I incorporate those discussions by reference here; there is no need to repeat them.

Turning to the particular facts of this case, the mischief our case law in this area has caused is apparent. The malpractice action arising from the facts the majority details was filed in California state court in 2005. JA1139-49. At that point, it was commonly understood that state law malpractice claims arising out of legal representation involving federal matters—including patent matters—were properly lodged in state courts and, absent diversity among the parties, *only* state courts. *See, e.g.*, *Adamasu v. Gifford, Krass, Groh, Sprinkle, Anderson & Citkowski, P.C.*, 409 F. Supp. 2d 788 (E.D. Mich. 2005) (remanding a legal malpractice claim alleging negligent patent prosecution); *New Tek Mfg., Inc. v. Beehner*, 702 N.W.2d 336 (Neb. 2005) ("*New Tek I*") (finding that state court jurisdiction is proper over a malpractice claim in which the plaintiff would have to prove, under its properly construed patent claims, that it would have prevailed in a patent infringement action).[1] Not one of the three defen-

---

[1]  *See also IMT, Inc. v. Haynes & Boone, L.L.P.*, 1999 WL 58838 (N.D. Tex. Feb. 1, 1999) (remanding a legal malpractice claim to state court where the plaintiff alleged that its attorney's negligence in filing a continuation-in-part patent application instead of a new patent application raised questions about the patent's validity and enforceability); *Commonwealth Film Processing, Inc. v. Moss & Rocovich, P.C.*, 778 F. Supp. 283 (W.D. Va. 1991) (remanding malpractice action based on an attorney's alleged lack of patent knowledge); *Minatronics Corp. v. Buchanan Ingersoll P.C.*, 28 Pa. D. & C.4th 214 (Pa. Comm. Pl. 1996) (finding no jurisdiction over a claim for malpractice based on a missed patent application filing deadline, even though the court would have to determine whether a patent would have issued); *Fotodyne, Inc. v. Barry*, 449 N.W.2d 337 (Wis. Ct. App. Sept. 26, 1989) (unpublished) (finding that state court jurisdiction is proper in a malpractice action based on an attorney's failure to notify his client that the PTO had rejected his patent application).

dants—all sophisticated lawyers with sophisticated counsel—challenged the state court's jurisdiction over this action at the time it was filed, or for years thereafter.

In 2007, two years after the action was filed in state court, this court affected a sea change by announcing its assertion of jurisdiction over these types of state law claims. *See Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007). By then, the statute of limitations governing Landmark's malpractice claim had expired. A year after our decision in *Air Measurement*, appellees filed a motion to dismiss in state court, which was granted based on our case law.

California has no savings statute, however, and, by statute, prohibits application of equitable tolling principles to malpractice claims, causing Landmark's malpractice claim to be lost forever. *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2008 WL 4483817 (N.D. Cal. Oct. 2, 2008). Thus, although Landmark filed its federal action on the same day the state court dismissed it, Landmark could no longer assert a malpractice claim against Kohler and MLB. *Id.* In other words, a cause of action which—given the undisputed facts—was far from frivolous, which arises under and was governed by state law, and which all parties agreed for years had been properly asserted in California state court, was irretrievably lost by our disruption of the parties' well-settled expectations in this area.

For all the reasons articulated in my dissent from the denial of rehearing *en banc* in *Byrne* and because, as in this case, our case law in this area treads unduly into matters which are—and should remain—governed by

state law, I encourage our court to address the scope of our jurisdiction in these matters *en banc*.